269 So.2d 239

John J. RAMP, Jr., et al.

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al.

Nos. 51943 and 51972.

Nov. 6, 1972.

William F. Wessel, New Orleans, for plaintiffs-applicants.

Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, H. Martin Hunley, Jr., New Orleans, for defendants-respondents.

BARHAM, Justice.

Plaintiffs, four of the five children of John J. Ramp, Sr., brought this action in tort for damages allegedly sustained because attorneys who represented them earlier in their father's succession proceedings were negligent. The defendants are those two attorneys and their liability insurer for errors and omissions, St. Paul Fire and Marine Insurance Company. The trial

court dismissed plaintiffs' suit. On appeal the Fourth Circuit reversed, finding negligence on the part of the attorneys, casting all parties defendant for damages in the sum of $2250.00, and casting the defendant attorneys for return of a $200.00 legal fee. La.App., 254 So.2d 79. We granted certiorari.

The present litigation arose out of matters decided in Succession of Ramp, 252 La. 660, 212 So.2d 419. We there set out the pertinent facts, as follows:

"John J. Ramp, Sr., died testate in 1965, survived by his third wife, Mildred Machin Ramp, and by four children of a second marriage and one child of a first marriage. The decedent's will attempted to give the usufruct of all of his property to his third wife, who was also named executrix, bequeathed the disposable portion of his estate to certain named legatees, and provided: '* * * I will and bequeath the forced portion of my estate to all of my children, share and share alike, subject to the usufruct in favor of my wife.'

"After the succession was opened and Mrs. Mildred Machin Ramp confirmed as testamentary executrix, the four children of decedent's second marriage filed suit against the executrix to annul the will, primarily alleging testamentary incapacity. Following negotiations concerning this attack upon the will, the executrix and these four forced heirs entered into a compromise agreement. However, the contract of

compromise signed by the parties not only sought to dismiss the nullity suit with prejudice but attempted to bind the four forced heirs 'to accept the succession of their father in accordance with the terms and conditions stated in his last will * * *' and 'to file no further opposition to or contest of decedent's will on any grounds whatsoever'. An inconsequential amount when compared to the value of decedent's estate was paid to these heirs by the succession in the compromise agreement. After the filing of a joint petition and advertisement, the district court approved the compromise insofar as it dismissed the suit to annul the will.

"In response to a later rule filed by the executrix asking the heirs to show cause why they should not be put in possession of decedent's property in accordance with the terms of the will, the forced heirs filed opposition [through counsel other than the defendants in this suit] on the ground that the dispositions of the will impinged upon their legitime, in contravention of Civil Code Article 1493. Decedent's third wife is not benefited by Article 916 of the Civil Code, and it is apparent that any attempt to burden the legitime of the children with a usufruct in her favor does in fact impinge upon their forced portion since the will made a specific bequest of the disposable portion of the decedent's estate.

"The trial court dismissed the opposition of the four forced heirs who had been par-

ties to the compromise agreement, and placed them in possession in accordance with the will and subject to the third wife's usufruct. The trial court, however placed the child of the first marriage, who had not been a party to the lawsuit or the compromise, into full possession of her forced portion.

"On appeal by all five children the Court of Appeal, Fourth Circuit, reversed the judgment of the lower court in part, holding that the four children of the second marriage did not have to accept their forced portion subject to the usufruct in favor of the third wife. See [La.App.,] 205 So.2d 86. The Court of Appeal held that the compromise agreement tended to divide the succession and was therefore an act of partition which was subject to rescission for lesion beyond one-fourth, under Civil Code Articles 1398 and 1402. We granted certiorari to determine whether these articles are applicable."

We held in that case that the Court of Appeal had reached the correct result, but that it had incorrectly applied the law since the contract or agreement could not be a partition when one of the forced heirs and at least two of the testamentary legatees were not parties. We determined that the contract was one of compromise limited to a dismissal of the nullity suit pending against the succession, saying: "This, then, is not a compromise between a *legatee* and some of the heirs, but it is simply a com-promise by the *succession through its representative* of a suit and claim of some of the forced heirs. * * *" (Emphasis here and elsewhere supplied.)

In reforming the contract to accomplish that which could be effectuated between the parties to that agreement, we struck two clauses from the contract which, if valid, would have forced the four heirs who executed it to accept the succession in accordance with the terms of the will and to file no further opposition to the will on any grounds whatever.

It is argued by the defendants in the present matter that although it was error to include this waiver in the compromise agreement, plaintiffs are not entitled to damages. They urge that since these clauses were struck from the agreement and plaintiffs were placed in possession of their legitime free from the usufruct of the third wife, the plaintiffs suffered no damage.

For an understanding of the case now before us, it is necessary to recount in some detail the dealings of the plaintiffs with the defendant attorneys, Steven R. Plotkin and Joseph W. Nelkin. These plaintiffs consulted Plotkin concerning their rights in the succession of their father. After a brief discussion Plotkin referred them to his partner, Nelkin, who he said specialized in succession work. After several meetings Nelkin filed a suit attacking the testamentary capacity of the plain-

tiffs' deceased father. Nelkin testified that he was handling the succession matters step by step, proceeding first with the attack upon the will itself which would, if successful, give the plaintiffs and the fifth Ramp child the right to the entire estate, and that if this was unsuccessful, he would then proceed to a second step of asserting forced heirship. According to his testimony, he informed his clients that he planned to handle the matter by proceeding in stages, but he never explained, in response to their questions, the right of the usufructuary or the effect of the usufruct. Nelkin, becoming convinced that the attack on the will would be unsuccessful, proposed a settlement, but he insists that he intended the compromise to affect only the nullity proceeding. The clients, to the contrary, insist that they were told *at all stages of discussion preceding the compromise agreement* that they were compromising all their rights, and that they were informed that only upon the death of the third wife could they receive full ownership of their legitime.

Plotkin and Nelkin dissolved their partnership before the compromise agreement was drafted or presented for execution. Plotkin kept these plaintiffs as clients, and Nelkin was, according to his testimony, totally disassociated from any representation of them at that time. The compromise agreement was drawn by the attorney for the executrix and forwarded to Nelkin. After examining the instrument Nelkin sent it to Plotkin with the recommendation that the plaintiffs be advised to execute it as written. According to Plotkin's testimony, he merely looked at the document to make sure it contained the amount of the stipulated settlement and the signatures of his clients. He testified: "* * * As to the detailed terms of the release I did not read them nor could I have any recollection of discussing the detailed terms which I now later know, of course, that this lawsuit is based upon innocuous statement in the release which led to the litigation that *I did not apparently observe or explain to them*."

According to the plaintiffs' repeated statements, they were told when they *signed* this agreement that they could not get possession of their forced portion of the estate in full ownership until the third wife died. Plotkin did not deny telling them this. Indeed, he excuses himself by saying that succession law is a field in which he did not specialize.

A letter written to all of the plaintiffs by Plotkin shortly after the dismissal of the nullity suit under the compromise agreement clearly shows that Plotkin believed that the compromise (for which each of the plaintiffs received $200.00 and for which he received $200.00 as attorney) was in full settlement of *all of their succession rights,* including the forfeiture of their right to their legitime free from the

usufruct of the third wife. The letter reads:

"Mesdames and Gentlemen:

"I have been contacted by Mr. Maurice Burk, attorney for the Succession of John J. Ramp, Sr., requesting that all of the heirs or legatees *join in the petition for possession* and accept service on the final account.

"I have reviewed the pleadings and they are in proper order.

"Therefore, it is necessary that each of you make an appointment with Mr. Maurice Burk, 501 Security Homestead Building, 219 Carondelet Street, New Orleans, Louisiana, to sign the necessary papers *which will complete this matter*.

"Very truly yours,
s/d "Steven R. Plotkin
"STEVEN R. PLOTKIN"

The principal issue which we must decide is whether the acts or omissions of the attorneys Plotkin and Nelkin damaged the plaintiffs. This calls for determination of causation.

██ Although the litigation which gave rise to the reformation of the contract of compromise involved some collateral matters, that litigation was brought about by the plaintiffs' attempt to secure legal rights which Plotkin and Nelkin had led them to believe they had lost. The litigation went through the district court, the Court of Appeal, and the Supreme Court, requiring an expenditure of considerable time and the incurring of attorney's fees by the plaintiffs. Obviously the errors in action and in omission by Plotkin and Nelkin were a cause-in-fact of the damage or harm suffered by the plaintiffs.

This being so, we move to a consideration of what duty was owed by the attorneys to the plaintiffs.

██ An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. He is not required to exercise perfect judgment in every instance. However, the attorney's license to practice and his contract for employment hold out to the client that he possesses certain minimal skills, knowledge, and abilities. The fact that an attorney's judgment in confecting contracts, handling suits, and doing other business may result in litigation is not, in and of itself, a breach of a duty to the client. Risk of future litigation is often a necessary element or result of legal advice and legal representation. The very fact of litigation is a result of the disparity of professional judgment of those in the legal profession. However, lawyers are obligated to scrutinize any contract which they advise their clients to execute, and are required to disclose the full import of the instrument and the possible consequences that may arise upon execution of it.

According to the expert testimony in this case, every lawyer undertaking to advise clients on succession rights must know the basic concepts of forced heirship, which include a child's right to his legitime free and unencumbered except where the heir's other parent is a surviving spouse with a legal or testamentary usufruct on his forced portion. Moreover, even without expert testimony we would necessarily take notice that a legal duty is breached when the attorney fails to recognize such an obvious encroachment upon the legitime and to properly advise clients in that regard when they seek to recover all that they can from their parent's estate. We therefore conclude that Plotkin and Nelkin breached a legal duty to these plaintiffs.

Inquiring whether the duty breached included within it the risk of the damage or harm which the plaintiffs suffered, we answer affirmatively. It was gross error for the attorneys to allow these petitioners, without full disclosure, to deprive themselves of a considerable estate upon the payment of such a minimal sum. We are convinced that these lawyers believed they had effectively compromised all of these plaintiffs' rights. We are of the opinion that they did not adequately and properly advise their clients as to their legal rights. We are of the opinion that through grave error and omission on their part they encouraged the plaintiffs to execute a con-

tract which, but for other legal advice and further litigation, would have deprived them of a valuable legal right. A reasonably prudent member of the profession acting under accepted standards of that profession in this locality would have known that extensive litigation would be necessary if the plaintiffs were to recover their legal rights once they had executed the contract proposed by these defendant attorneys.

The risk of the expenditure of sums of money for costs of litigation, including attorney's fees, directly flowed from the breach of the duty owed by the attorneys to these plaintiffs. Therefore the defendant attorneys were negligent in their acts and omissions toward the plaintiffs, and that negligence was the cause of the damage suffered by them.

The plaintiffs eventually recovered through employment of other counsel all their rights in the succession—that is, their unencumbered legitime. Therefore they are not damaged by any loss of their succession rights. However, they were damaged when they resorted to the costly litigation which was the only method of obtaining these rights. As the appellate court said, " * * * These included the additional cost of resisting the judicial enforcement of the compromise in the trial court, of appealing and obtaining reversal of the adverse trial court judgment, and of appearing and arguing before the Supreme

Court when certiorari was granted to the executrix".[1]

The Court of Appeal refused to award the actual attorney's fees which were paid as calculated on a contingent basis. It agreed that the contingent fee was reasonable, but was of the opinion that the fee for additional services rendered by present counsel, after the successful litigation had restored plaintiffs to their forced portions, was included in the total fee and should not be recovered as an item of damages. That court attempted to determine what would constitute reasonable advanced attorney's fees and based its award of damages on that criterion.

 Plaintiffs' contract with present counsel was to pay 15 per cent of "all the property we obtain out of the said succession". However, the attorney and his clients have accepted this contract from its inception as a contract for 15 per cent for work performed in securing a judgment restoring their legitime unencumbered. The bills sent to each of the plaintiffs carefully

distinguished between the contingent fee for counsel's performance in that litigation and "Atty fees for work performed after Supreme Court", where success was achieved. Each plaintiff has paid on partial billing the contingent fee for that litigation *plus* additional sums for other legal work done in connection with the succession. We are of the opinion that the contingent fee stated in the contract is reasonable as such for successfully obtaining what these defendants attempted to bargain away. We are also of the opinion that the actual amount computed and paid on the contingent fee basis is reasonable considering the length of the litigation, the services required, the time expended, and the other elements of the attorney-client relationship. The attorney's fees incurred by the plaintiffs in eliminating or in mitigating the damage caused them by the negligence of the defendants are their total damage. That actual fee that has been or will be paid by the plaintiffs for the litigation which restored their legitime unencumbered is $3510.84.[2]

---

1. Defendants' able counsel argues forcefully that the real error occurred when the district court did not properly interpret the compromise agreement. He argues first that this is the total causation of the damage suffered by plaintiffs since the Court of Appeal and the Supreme Court determined the unencumbered legitime had not been compromised under that agreement. He appears to argue alternatively that costs incurred thereafter could be attributable only to a correction of the trial court's error and

not to defendants'. We have previously determined in this opinion that the causation factor of the defendants' act carried through to the final determination of plaintiffs' legal rights in the highest court of this state, and we here reject the idea that the damage which flowed therefrom can be separated and categorized.

2. Counsel for plaintiffs has miscalculated the 15 per cent contingent fee on the $16,312.25 collected in the partition proceeding. His error resulted from the in-

■ The $200.00 attorney's fees paid to Plotkin or to Plotkin and Nelkin cannot be an element of damage. This was a fee paid for services rendered in compromising the nullity action, for which plaintiffs received some value.

■ Counsel for plaintiffs urges here, as he did in the Court of Appeal, that damages should also include the depreciation in the value of the succession property between the time of the filing of the descriptive list and the date of the ultimate sale of the property. Plaintiffs had at one time sued to remove the executrix, but that matter was abandoned; and the question of whether the estate was properly handled is one which cannot be here collaterally raised. The Court of Appeal correctly rejected the claim for depreciation allegedly due to mismanagement.

■ Counsel for plaintiffs also argues that they were deprived of the possession of their legitime for almost three years between the proposed final account and the judgment of possession. The final account includes rents and fruits during the entire period of administration, and these four plaintiffs shared in those rents along with the other heir and the legatees. They have not shown, and they cannot show collaterally here, that the rents collected were not the actual earnings due on the property during the delay. This claim must be rejected also.

For the reasons assigned the judgment of the Court of Appeal is amended, and judgment is rendered in favor of the plaintiffs, John J. Ramp, Jr., Salvador A. Ramp, Mrs. Margaret Ramp Rossi, and Mrs. Delphine Ramp Puderer, and against the defendants, St. Paul Fire and Marine Insurance Company, Steven R. Plotkin, and Joseph W. Nelkin, in the full sum of $3510.84, with legal interest on that sum from date of judicial demand until paid. Defendants are cast for all costs in all courts in these proceedings.

DIXON, J., concurs with reasons.

HAMLIN, J., dissents being of the opinion that the judgment of the trial judge is correct.

---

clusion in the amount charged Salvador Ramp not only 15 per cent attorney's fees for the work done in the litigation unencumbering that heir's forced portion, but also 15 per cent upon a legacy to him which was not involved in the contract of compromise and which, as part of the disposable property, was properly subject to a testamentary usufruct. This charge is not attributable to counsel's work in obtaining the forced portion unencumbered. There are other minor arithmetical errors in his computation. We simply compute 15 per cent of $16,312.25 and arrive at a figure of $2446.84. We add to that 15 per cent of $7093.33 received by these heirs in distribution of funds from the expropriation of some of the property, or $1064.00, to reach a total of $3510.84.

DIXON, Justice (concurring).

I respectfully concur.

For the first time in many years, however, this court has awarded attorney's fees as damages for a breach of contract. I have no objections to a compensatory system which provides for complete recovery of all damages from one who wrongfully injures another, either by virtue of breach of a contractual obligation, statutory obligation, or other wrongful act. Complete recovery can very well include an award for reasonable attorney's fees necessarily incurred because of the wrongful act of another. Certainly there is no sound reason why a litigant can recover doctor's fees required to repair a doctor's bad work, but cannot recover lawyer's fees to repair a lawyer's bad work.

Nevertheless, there is substantial jurisprudence in Louisiana holding that with certain exceptions, attorney's fees are not recoverable as an item of damages in the absence of statutory or contractual provisions allowing their recovery.[1]

We should make it clear that attorney's fees are now recognized as a recoverable item of damages, at least in professional malpractice cases.

1. See, Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970); Comment, 34 Tu.L.Rev. 146 (1959); Comment, 20 La.L.Rev. 389 (1960).