428 So.2d 995 (1983)
CHEROKEE RESTAURANT, INC., et al.
v.
Allen B. PIERSON, Jr.
No. 82 CA 0188.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
*996 Craig L. Kaster, Baton Rouge, for plaintiffs.
Donald S. Zuber, Baton Rouge, for defendant.
Before COVINGTON, LOTTINGER, EDWARDS, PONDER, COLE, WATKINS, SHORTESS, CARTER, SAVOIE, LANIER, CRAIN and ALFORD, JJ.
COLE, Judge.
This is an appeal from the trial court's dismissal of plaintiffs' malpractice suit against the defendant attorney on the peremptory exception raising the objections of prescription and no right of action. According to plaintiffs' petition the alleged act of malpractice involved a lease which defendant Pierson drafted after being consulted jointly by appellant-lessee Lyn Ezell and the landowner-lessor William F. McLendon. Ezell wished to lease certain immovable property in Tangipahoa Parish belonging to McLendon for the purpose of developing a campground. At the time of the negotiations for the lease, the property contained a trash dump. Since a large amount of capital was necessary to finance the extensive improvements which were necessary, the parties to the lease allegedly requested Pierson to draft the longest lease allowed by law. Pierson prepared the lease which was signed by Ezell and McLendon with Pierson as notary on January 15, 1973. The lease was for a term of one year, but it also purported to grant "an infinite number of annual options to renew this lease for additional periods of one year each."
When the lease was being prepared, Ezell explained to Pierson that he wished to transfer the lease to a corporation and that he would form another corporation to operate a restaurant concession. Thus, the lease expressly provided that the lessee could assign the lease to a new corporation to be formed by the lessee, and that the lessee could sublease portions of the premises for concessions. Pursuant to Ezell's stated intentions, a corporation known as Cherokee Beach and Campgrounds, Inc. was formed on January 16, 1973 by act before Pierson, and on May 1,1973 Ezell assigned his rights in the lease to the new corporation, of which he was the majority shareholder. This assignment provided in part that Ezell was released of all rights and liabilities under the original lease. On July 3, 1973 Beach granted a sublease to appellant Cherokee Restaurant, Inc., the corporation formed by Ezell to operate the restaurant concession. Ezell appeared for both corporations. On May 10, 1973 Ezell sold his interest in Beach to Pascal P. Painter and Margaret Painter. However, in consideration of the sale, it was agreed Ezell would retain the exclusive right to construct and operate concessions. After this sale, Ezell's only remaining interest in the leased property was through Restaurant.
On March 9, 1978, Mr. McLendon, the lessor, sought to have the lease to Ezell declared invalid in suit number 53,424 on the docket of the 21st Judicial District *997 Court entitled "William F. McLendon vs. Cherokee Beach and Campgrounds, Inc., et al." Plaintiffs-appellants were among the named defendants in this case. Since it appeared the lease was invalid because it lacked a definite term,[1] the case was settled before trial by a compromise agreement between Beach and Mr. McLendon. These parties agreed to amend the lease so it would terminate in 1989. This compromise, which specifically involved only Beach and Mr. McLendon, was dictated into the record of the suit on November 15, 1978. Neither plaintiff-appellant was a party to the compromise which concluded the "McLendon vs. Cherokee Beach" litigation. Defendant Pierson was not a party to the compromise nor did he represent any party in the McLendon litigation.
On November 15, 1979, the instant suit was filed, alleging that Pierson had breached his contract to prepare a valid lease and had thus been negligent in his representation of Mr. Ezell. Defendant filed a number of objections which were heard by the court on October 23, 1981. For written reasons assigned, the district court dismissed plaintiffs' suit on the basis of prescription and no right of action. The district court judgment was signed on December 2, 1981, and from this adverse judgment, plaintiffs have taken a devolutive appeal to this Court. We affirm.
This case poses the question of the correct prescriptive period for a malpractice claim against an attorney. The trial court found the one year prescriptive period applicable for delictual actions to be controlling,[2] and under this prescriptive period, plaintiffs' claim had prescribed. The trial court's decision was based upon the recent case of Sciacca v. Polizzi, 403 So.2d 728 (La.1981), a case which involved medical malpractice. In Sciacca, the Louisiana Supreme Court held as follows (page 731):
"Unlike engineers, mechanics and shipbuilders, a physician does not, simply by undertaking the treatment of a case, contract with a patient for a specific result. When a patient is injured by the negligence of his physician, his action against that physician is one in tort, unless the physician has contracted with the patient for a specific cure or result. The action is essentially one for injuries caused by negligence, and the statute of limitations governing negligence actions is the applicable statute regardless of the form of action by which liability is sought to be enforced."
In so ruling, the Supreme Court expressly overruled decisions of the First and Fourth Circuits which held a negligent act of malpractice by a physician could constitute either a tort or a breach of contract for services entered into between the doctor and his patient, even when there was no guarantee of a specific result by the physician.
The Sciacca opinion quoted with approval the following passage from Judge Wisdom's opinion in Kozan v. Comstock, 270 F.2d 839 (5th Cir.1959):
"It is the nature of the duty breached that should determine whether the action is in tort or in contract. To determine the duty one must examine the patientphysician relationship. It is true that usually a consensual relationship exists and the physician agrees impliedly to treat the patient in a proper manner. Thus, a malpractice suit is inextricably bound up with the idea of breach of implied contract. However, the patientphysician relationship, and the corresponding duty that is owed, is not one that is completely dependent upon a contract theory. There are instances in which the relationship exists though there is clearly no contractual relationship between the patient and the physician. Thus, the patient may be incapable of contracting or a third person may have contracted with the physician for the treatment of the patient. Even in these instances in which no contract is present the physician still owes a duty to the patient. The duty of due care is imposed *998 by law and is something over and above any contractual duty. Certainly, a physician could not avoid liability for negligent conduct by having contracted not to be liable for negligence. The duty is owed in all cases, and a breach of this duty constitutes a tort. On principle then, we consider a malpractice action as tortious in nature whether the duty grows out of a contractual relation or has no origin in contract. This view that malpractice suits are tortious in nature probably represents the majority view.
"We do not mean to say that there can never be a contractual action against a physician. Generally, a physician undertakes only to utilize his best skill and judgment. When he negligently fails to do so he may have committed a tort. However, a physician may, by express contract, agree to effect a cure or warrant that a particular result will be obtained. In such instances an action in contract may lie against a physician. However, in the absence of a special warranty or contract, a malpractice suit against a physician is an action in tort and is subject to the limitation period for tort actions." 270 F.2d at 844, 845. (Footnotes omitted.)
The Sciacca ruling casts doubt upon similar appellate court decisions involving legal malpractice which state a malpractice action against an attorney gives rise to actions both in tort and in contract. See Cummings v. Skeahan Corp., 405 So.2d 1146 (La.App. 1st Cir.1981); Ambrose v. Roberts, 393 So.2d 132 (La.App. 3d Cir. 1980), writ denied, 394 So.2d 1234 (La.1980); Johnson v. Daye, 363 So.2d 940 (La.App. 3d Cir.1978); Jackson v. Zito, 314 So.2d 401 (La.App. 1st Cir.1975), writ denied, 320 So.2d 551, 553 (La.1975); Marchand v. Miazza, 151 So.2d 372 (La.App. 4th Cir.1963). Cf. Bill Nolan Livestock, Inc. v. Simpson, 402 So.2d 214 (La.App. 1st Cir.1981). Although this Court has previously reaffirmed this line of cases in Cummings[3] despite the Sciacca ruling, we no longer see any reason to differentiate between medical malpractice and legal malpractice. Conceptually, the action for legal malpractice is no different than the action for medical malpractice. Both entail a deviation from the accepted standard of care of the profession. Although the attorney-client relationship gives rise to an implied warranty of the attorney to use his best professional skill and judgment, this duty is legal rather than contractual in nature, and a breach of this duty amounts to a tort. See Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972); Corceller v. Brooks, 347 So.2d 274 (La.App. 4th Cir. 1977). Only when an attorney breaches an express warranty of result does an action for breach of contract arise.
As pointed out by Judge Edwards in his Cummings concurrence, the application of the Sciacca rule to legal malpractice is consistent with a pre-Zito opinion of this circuit that attorney malpractice claims ordinarily have their basis in tort except in unusual circumstances. In Vessel v. St. Paul Fire & Marine Insurance Co., 276 So.2d 874 (La. App. 1st Cir.1973), this court was presented with the question of whether suits for legal malpractice are contract actions or tort actions for the purpose of applying La.R.S. 22:655. The court distinguished therein two different approaches to the liability of an attorney. One line of jurisprudence, exemplified by Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 262 So.2d 350 (1972) and Delta Equipment and Constr. Co. v. Royal Indem. Co., 186 So.2d 454 (La.App. 1st Cir. 1966), concerned the nature and the extent of the undertaking by the attorney. The other line of cases, illustrated by Ramp, supra, involves the negligence of the attorney in carrying out his professional duties where the attorney-client relationship is established. Judge Sartain of this Court reviewed the conflicting lines of jurisprudence and concluded:
"... we note that there can be a serious dispute between an individual and an *999 attorney relating solely to the issue of whether or not there is a contract creating a client-attorney relationship. Damages growing out of a breach of any obligation thereunder would be treated as any other case involving a breach of contract. However, when there is no dispute as to the client-attorney relationship and the issue is solely one of whether the conduct of the attorney thereunder constituted malpractice, i.e., failed to meet the standard of professional expertise as required under the circumstances, it is an action contemplated by C.C. Article 2315 and, therefore, R.S. 22:655 is applicable." 276 So.2d at 877.
In light of the above, we reverse Jackson v. Zito, supra, and its progeny insofar as they recognize a ten year prescriptive period for the "negligent breach of contract" by an attorney. A malpractice action against an attorney will now normally be subject to the one year prescriptive period of La.Civ.Code art. 3536. However, when an attorney expressly warrants a particular result, i.e., guarantees winning a lawsuit, guarantees title to property, guarantees or warrants the ultimate legal effect of his work product, or agrees to perform certain work and does nothing whatsoever, then clearly there would be an action in contract and the ten year prescriptive period of La.Civ.Code art. 3544 would apply.
However, seldom does a lawyer, by undertaking the representation of a client, contract for or guarantee a specific result. As stated in Corceller, supra, "Warranty or guarantee by an attorney of a particular result of a litigious claim is foreign to the nature of the legal profession." 347 So.2d at 277 (Footnote omitted.) In the usual case, the lawyer contracts with the client to render that client the professional expertise and that degree of care, skill, and diligence which is exercised by prudent practicing attorneys. Though he is not required to exercise perfect judgment in every instance (see Ramp, supra, at p. 244), if the attorney's judgment falls below the required standard of care, his resulting liability is for the breach of a legal rather than a contractual duty.
Turning to the facts of the instant case, we do not believe the attorney here guaranteed the desired result of the lease which he prepared. When Pierson agreed to prepare a lease with the longest term allowed by law, this necessarily entailed the use of his judgment, a decisional process, and the formulation of his opinion. As such, a specific result was envisioned but not guaranteed. Pierson's role in the matter afforded him discretion as to what he believed the state of the law is as regards the "certain time" requirement of La.Civ. Code art. 2674. The exercise of this discretion is contradictory to the idea of contracting for a specific result. In actuality, the most that can be said, assuming the invalidity of the lease which was prepared, is that Pierson either negligently failed to research properly the point of law involved or fell short of the professional expertise possessed by a prudent attorney in reaching a correct conclusion. In either event, Pierson did not attain the required standard of care thereby breaching a legal duty. Thus, we agree with the trial court's holding that the ten year prescriptive period provided for causes based upon breach of a contractual duty is not applicable.
In applying the one year prescriptive period of article 3536, the trial court correctly held plaintiffs' claim had prescribed. Although plaintiffs argue they had no notice the lease might be invalid or that any damage had been suffered thereby until the compromise agreement was dictated into the record of the "McLendon v. Cherokee Beach" suit on November 15, 1978, they were actually put on notice when that suit was filed on March 9, 1978. Both plaintiffs herein, Cherokee Restaurant, Inc. and Lyn Ezell, were named as defendants in that suit. The one year prescriptive period of La.Civ.Code art. 3536 commences to run from the date the injured party discovered or should have discovered the existence of facts that would enable him to bring suit. La.Civ.Code art. 3537; Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970). As stated in Cartwright:

*1000 "[I]t is not necessary that the party have actual knowledge of the conditions as long as there is `constructive notice.' Whatever is notice enough to excite attention and put the [plaintiff] on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the [plaintiff] on inquiry is sufficient to start the running of prescription." 232 So.2d at 287.
Clearly, the fact of being sued was sufficient to excite the attention of the plaintiffs in this case and cause them to inquire of their rights. A direct attack was made upon the validity of the lease. This information was more than enough to put plaintiffs on notice and start the running of prescription. Since we conclude the plaintiffs became aware of the probable defect in the lease as of March 9, 1978, when they were sued by McLendon, their present action prescribed as it was not filed until November 15, 1979, more than one year later.
For the above reasons, the judgment of the trial court is affirmed. Appellants are to pay all costs.
AFFIRMED.
PONDER, J., dissents and assigns reasons.
PONDER, J., dissenting.
I agree with the majority view that the ordinary deviation from an accepted standard of care in legal matters should be governed by a one-year prescriptive period.
My difference of opinion arises from the majority's indistinct line between a tort, which is found, and a contract, which is not. The result of their reasoning may be the elimination of any contract claims at all in the absence of a signed document expressly acknowledging a contract and containing the guaranty of an expressed result.
I believe that oral and even implied contracts can exist between attorneys and their clients. By ruling that the understood desired result of the longest lease possible and the undertaking to reach that result did not result in a contract, the majority, I believe, has effectually eliminated contractual claims against attorneys. The distinguishing factor of the exercise of judgment will almost always be present in the attorneyclient relationship and, by their reasoning, will inevitably result in the malpractice being a tort.
I therefore dissent.
NOTES
[1] See La.Civ.Code art. 2674.
[2] La.Civ.Code art. 3536.
[3] The court in Cummings pointed out, however, that its result would be the same even if the Sciacca rule were applied, since the case involved a bad title opinion, "the correctness of which can be warranted or guaranteed." 405 So.2d at 1147.