493 So.2d 734 (1986)
John L. CRAWFORD, Plaintiff-Appellant,
v.
GRAY AND ASSOCIATES, Ray Gray, Steven L. Porter and Hartford Insurance Company, Defendants-Appellees.
No. 17844-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1986.
Rehearing Denied September 18, 1986.
*736 Hall & Golden by William D. Hall, Shreveport, for John L. Crawford, plaintiff-appellant.
Cook, Yancey, King & Galloway by Stephen R. Yancey, Shreveport, for Steven L. Porter and Hartford Ins. Co., defendants-appellees.
Loridans & Loridans by Henri Loridans, Bossier City, for Ray Gray, defendant-appellant.
Before JASPER E. JONES, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Plaintiff, John L. Crawford instituted this action in negligence after the state, through the Department of Highways, informed him that the convenience store he was building on his property in rural DeSoto Parish encroached upon a right of way granted to the state. Named as defendants were Steven Porter, the attorney who performed the title examination, and his errors and omissions carrier, New England Reinsurance Corporation,[1] Ray Gray, the surveyor who platted and staked the property at plaintiff's request, and his firm, Gray & Associates. Judgment was rendered in favor of plaintiff and against Gray & Associates and Ray Gray, in solido for $43,782.10. This amount was reduced, however, by fifty percent, which represented the trial court's assessment of plaintiff's degree of comparative fault. From this judgment, plaintiff and defendants Gray & Associates and Ray Gray have appealed. We reverse in part, affirm in part and amend in part.

FACTS
In late August or early September, 1983, prior to purchasing a small tract located in DeSoto Parish for the purpose of constructing a convenience store, plaintiff and his wife retained the services of Steven Porter, a local attorney practicing in DeSoto Parish, to render a title opinion on the property. In performing the title search, Mr. Porter obtained a list of conveyance book references covering the subject property from a local abstract company and conducted the title search based upon the list of references provided by that source. Mr. Porter then rendered a preliminary title opinion which indicated that it would be necessary to open a succession in order that a good and merchantable title could be acquired from plaintiff's ancestors-in-title.
The succession was subsequently completed and on November 29, 1983, the sale of the property to plaintiff was completed. At that time, Mr. Porter also furnished plaintiff with a final title opinion showing that plaintiff had acquired good and valid title to the property. This opinion stated that it was based on his examination of the DeSoto Parish public records for "at least the past sixty years." Both the preliminary *737 title opinion and the final title opinion were given subject to "all existing rights of way, easements, or servitudes affecting the above described property."
In August of 1984, plaintiff engaged the services of defendant, Ray Gray of Gray & Associates, to conduct a survey of this property so that the boundaries could be marked off to effectively utilize the entire area of the property for the construction of his business. The survey was completed, the boundaries were marked and plaintiff was furnished with a plat which revealed no servitudes, easements or rights of way.
Plaintiff subsequently began construction of the convenience store within the boundaries indicated by Gray's survey plat. After the slab of the building had been poured and the walls partially erected, plaintiff was contacted by agents of the Louisiana Department of Highways, who advised him the state had a fifty foot right of way on each side of the center line of Louisiana Highway 509, and that a nine foot by twelve foot corner of plaintiff's building was encroaching upon that right of way and would have to be moved.
As a result, plaintiff filed suit against Gray, Gray & Associates, Porter, and New England Reinsurance Corporation, Porter's liability insurer, alleging that they were negligent in failing to reveal the existence of this purported right of way.
The trial court found that defendant Steven Porter was free from negligence, but that defendants Ray Gray and Gray & Associates were fifty percent negligent and that plaintiff John Crawford was fifty percent negligent in failing to locate what the trial court felt was an apparent servitude under the rationale of Richmond v. Zapata Development Corporation, 350 So.2d 875 (La.1977). Plaintiff was awarded $43,782.10 in damages, which was subject to the court's finding of comparative negligence. From this judgment, defendants Ray Gray and Gray & Associates suspensively appeal, and plaintiff John Crawford devolutively appeals. Defendants Steven Porter and his insurer have neither appealed nor answered either of the other two appeals.
In his appeal, plaintiff asserts that the trial court erred in failing to find the attorney negligent. He argues that Steven Porter should have explained the exclusions contained in his title opinion. Plaintiff also asserts that he should not have been found negligent and that his award was insufficient. Defendants Gray and Gray & Associates argue that there was no proof that the servitude exists in that there was no proof adduced to show that plaintiff's ancestor-in-title participated in the granting of the right of way. Additionally, defendants Gray and Gray & Associates argue that even if the servitude was proven at trial, there was insufficient evidence to support causation between the surveyor's failure to indicate the servitude and Crawford's damages because Crawford incorrectly assumed that a servitude of thirty feet existed. Furthermore, defendants Gray and Gray & Associates claim that the damage award was excessive.

LIABILITY OF THE ATTORNEY
Plaintiff argues that the trial court erred in failing to find the attorney who performed the title opinion, Steven Porter, negligent in failing to explain the exclusions contained on his title opinion.
The question of the nature of the legal malpractice action has most frequently arisen in the context of issues relating to prescription. In considering such a prescriptive issue, this Court recently discussed the nature of legal malpractice in Gifford v. New England Reinsurance Corporation, 488 So.2d 736, (La.App. 2d Cir.1986):
An action for legal malpractice normally states a cause of action in tort and is subject to the one year prescriptive period provided by LSA-C.C. Art. 3492 (formerly LSA-C.C. Art. 3536). It is only where the attorney expressly warrants a specific result and fails to obtain that result, or agrees to perform certain work and does nothing whatsoever, that the cause of action is in contract and subject to the ten year prescriptive period provided *738 by LSA-C.C. Art. 3499 (formerly LSA-C.C. Art. 3544). Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La. App. 1st Cir.1983); Knighten v. Knighten, 447 So.2d 534 (La.App. 2d Cir.1984), writ denied, 448 So.2d 1303 (La.1984); Rayne State Bank v. National Union Fire Ins. Co., 469 So.2d 409 (La.App. 3d Cir.1985), writ granted, 475 So.2d 346 (La.1985), reversed in part on other grounds, Rayne State Bank & Trust v. Nat. U. Fire Ins., 483 So.2d 987 (La. 1986), and Elzy v. ABC Ins. Co., 472 So.2d 205 (La.App. 4th Cir.1985), writ denied, 475 So.2d 361 (La.1985).
This rule applicable to actions for legal malpractice was developed by analogy to the rule applicable to actions for medical malpractice enunciated in Sciacca v. Polizzi, 403 So.2d 728 (La.1981), which held that when a patient is injured by the negligence of his physician his action is in tort unless the physician has contracted for a specific cure or result. As noted in Sciacca, there is a legal duty upon and an implied agreement by the physician to treat the patient properly. A breach of this duty constitutes a tort and a malpractice action is tortious in nature whether the duty grows out of a contractual relation or has no origin in contract.
Likewise, an attorney is obligated to exercise that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972). A breach of that duty gives rise to an action in tort, governed by one year prescription, even though there is a contractual relationship between attorney and client which include implied obligations to properly perform certain services.
Therefore, it is clear that plaintiff's claim herein sounds in tort unless the defendant attorney warranted title.
In his title opinion dated November 29, 1983, defendant attorney stated "... that John L. Crawford and Linda L. Crawford, husband and wife, are vested with good and valid title to the above described property." In American Title Insurance Company v. Seago, 486 So.2d 938 (La.App. 1st Cir.1986), the First Circuit expressed the following opinion:
In Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983) writ denied 431 So.2d 773 (La.1983), this court applied a one year prescriptive period for legal malpractice with specific exceptions, to wit:
A malpractice action against an attorney will now normally be subject to the one year prescriptive period of La.Civ. Code art. 3536 [Now La.C.C. art. 3492]. However, when an attorney expressly warrants a particular result, i.e., guarantees winning a lawsuit, guarantees title to property, guarantees or warrants the ultimate legal effect of his work product, or agrees to perform certain work and does nothing whatsoever, then clearly there would be an action in contract and the ten year prescriptive period of La.Civ.Code art. 3544 would apply. (emphasis supplied). 428 So.2d 999.
We are of the opinion that when an attorney states in a title opinion letter that "according to my examination * * * has a valid and merchantable title," he has not expressly warranted or guaranteed title to property so as to fall within the ambit of the exception as spelled out by this court in Cherokee....
We agree with the First Circuit that the expression of opinion by an attorney as to the validity of title in a title opinion letter is not a specific warranty of a particular result or a guarantee of the title to property.[2] Consequently, plaintiff's action *739 is a tort action which must be judged under the standard of care enunciated in Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972), as noted in Gifford above.
At trial, defendant Steven Porter, described his procedure in checking the title to this property. Porter testified that he examined the title from the records of the DeSoto Title Research Abstract Office, noting the references, deeds, mortgages, etc. that were noted on the records for a period of time extending back into the 1920's. Porter then checked the public records for each entry noted from the abstract records. He also checked the indices for the mortgage and conveyance records for "probably ten years." The recorded right of way document which affected the property owned by Mr. Crawford was not included in the abstract company's records.
In support of his claim, plaintiff produced the testimony of Larry Butler, an attorney admitted to practice in 1978 specializing in real estate work and regularly running title examinations on property in DeSoto Parish. Mr. Butler testified that when checking title in DeSoto Parish, he or an abstractor employed by him checks the public records as revealed by the indices in the record room in Mansfield. Butler testified that if he had rendered a title opinion on this particular piece of property he would definitely have reflected rights of way, servitudes and easements apparent on the public records. He stated that there were three reasons that would cause him to do so, i.e., (1) the small size of the property, (2) the fact that the property abuts two roads, and (3) the fact that plaintiff intended to use the property for a convenience store. Butler noted that because of these factors, he would check the public records for servitudes without being asked to do so by the client. He stated that his title examinations never except rights of way. Butler opined that in this instance the title opinion should have reflected all easements and rights of way and that it was negligence to exclude those charges on the property. He noted that he would have reported these documents which were reflected in the public records and definitely would not have excepted them.
In opposition to the testimony of Mr. Butler, defendant called David Cohn, an attorney who practiced law from October, 1980 through November of 1984 in Mansfield, Louisiana in DeSoto Parish. Cohn testified that the procedure employed by Porter was a common practice in DeSoto Parish and was up to the standard of skill employed by title examiners in that parish. He also testified that the exclusions clause was customary. Cohn testified that he determines whether to disclose a servitude reflected in the public records to his client on a case by case basis. He stated that in this particular instance he would not have disclosed the servitude. Cohn testified that under these circumstances he would have advised the client to get a survey to reflect rights of way. When questioned relative to the phrase that Butler inserted in the title examination document to the effect *740 that he had personally examined the public records of the DeSoto Parish for a period of sixty years, Cohn stated that he did include that language for a period of time in his title opinion letters but then changed his methodology after discussing the matter with another attorney. He stated that if he examined the chain sheet from the abstract company then his title examination letter would so reflect.
Likewise, David Means, an attorney practicing real estate law in Mansfield, related that his firm performed "awfully close to one hundred percent" of the legal practice involving real estate in DeSoto Parish. Means testified that Porter's procedure conformed to the standard of care that he maintains. He also stated that the form of the title opinion conforms with DeSoto Parish norms and that the exclusionary clause was customary. However, Mr. Means did testify that he would list a right of way in a title examination document if he knew that it would cover the property being examined. Like Cohn, however, Means stated that he indicated in his title opinions that the source of his examination was from a list of references furnished by an abstract company and did not employ the language used by Porter to the effect that he had examined the public records of DeSoto Parish.
Therefore, it is clear that plaintiff's title opinion letter did not conform with the standards of his community because it did not accurately reflect the source of his examination of title. In this instance, had Porter based his examination upon the indices of the public records of DeSoto Parish as represented in his title opinion letter, he would have located the right of way grant and would have been under an obligation to reveal the existence of the document to his client so that his client could have taken appropriate measures, i.e., having his surveyor demarcate the bounds of the right of way on his survey plat in order to avoid encroachment. Since we hold that the basis for the attorney's breach of duty to his client was grounded on his failure to inform his client as to the correct source of information used in performing the title examination, we need not address the issue of whether, although customary practice in a locality, an attorney can validly except rights of way from a title examination. The trial court clearly erred in finding defendant attorney free from fault under these circumstances.

LIABILITY OF THE SURVEYOR
Surveyors are expected to perform with the same degree and care and skill exercised by others in the profession in the same general area. Lawyers Title Insurance Company v. Carey Hodges and Associates, 358 So.2d 964 (La.App. 1st Cir.1978); see also Charles Carter & Company, Inc. v. Edward C. McGee, Jr., 213 So.2d 89 (La.App. 1st Cir.1968).
Defendants Gray and Gray & Associates do not seriously contest the trial court's finding of negligence on his part but argue instead that plaintiff failed to adduce sufficient proof that the tract in question was burdened by a fifty foot right of way in favor of the State of Louisiana. Gray and Gray & Associates assert that plaintiff failed to prove that plaintiff's ancestor-in-title participated in the grant instrument and, therefore, the existence of the right of way was not validly shown at trial.
At trial, the recorded document purporting to be a grant of right of way of fifty feet from the center line of the roadway of Louisiana Highway 509 was introduced. The right of way document indicates that it includes land which begins at a point approximately four miles south of the bridge at Clear Lake and extends along Route No. 509 in a northeasterly direction for a distance of 5.2 miles to a point approximately one mile east of the bridge at Clear Lake. The right of way extends for a width of one hundred feet, measuring fifty feet on each side of the center line of the existing roadway along Highway 509. Irvin E. Thomas, an engineering specialist supervisor with the Department of Transportation and Development testified unequivocally that the property owned by *741 plaintiff was within the 5.2 mile area of the right of way.
In addressing this complaint at trial, the trial court stated:
This is not a specious arguemnt, (sic) but the Court feels, based upon the entire record that it is more likely than not that the property is burdened by a right-of-way in favor of the State of Louisiana. Plaintiff has certainly not proved to an absolute certainty that this is the case and the instrument itself is not free from ambiguity. The Court, however, understands the burden of proof in plaintiff's case to be proof by a preponderance of evidence. The preponderance of the evidence shows that it is more likely than not that the property in question is burdened by the fifty foot (50') right-of-way in favor of the State of Louisiana.
We agree with the trial court that plaintiff proved by preponderance of the evidence for purposes of this claim that the fifty foot right of way affects plaintiff's property.
Defendants Gray and Gray & Associates next argue that their negligence was not the cause in fact of plaintiff's harm because plaintiff had erroneously assumed that a thirty foot right of way affected his property.
In a pre-trial deposition, plaintiff indicated that he thought that there might be a thirty foot right of way from the center line of Highway 509. However, plaintiff testified that "... I hired a real estate lawyer to do a real estate lawyer's job. I didn't get a right of way description at all. I hired a registered land surveyor to show me those right of ways and those easements." At trial, plaintiff testified unequivocally that he was unaware of any rights of way affecting his property prior to construction of the building. He explained his deposition stating that he was confused at the time it was taken.
We decide that the fact that plaintiff may have possessed some invalid assumption as to the existence of a right of way prior to the construction of this property did not diminish the surveyor's duty to his client to question the existence of the servitude and to reflect the same on his survey plat. Consequently, the surveyor's negligence in this instance was a legal cause of plaintiff's harm. Therefore, the trial court properly concluded that the surveyor was also liable for plaintiff's damage.

ALLOCATION OF FAULT
To recapitulate, the trial judge assessed fifty percent of the fault to defendants Gray and Gray & Associates and fifty percent of the fault to plaintiff. In regard to Mr. Crawford's negligence, the trial court stated in his written reasons for judgment:
Although the Court feels that the survey company was negligent in rendering the survey, the Court also feels that petitioner in this case was not totally free from negligence in this matter. The Court feels that the petitioner in this case is a man of average intelligence, and that he does, in spite of his statements to the contrary, understand and appreciate generally what a right-of-way is and the affect (sic) of same on property. The Court notes in particular Mr. Crawford's deposition at pages 11, 17, 22, and 23. Further, the Supreme Court of our State has held that an individual land owner has a duty to investigate the extent of apparent servitudes (such as a public roadway) once he becomes aware of existence of same. (See Richmond v. Zepata (sic) Development Corp., 350 So.2d 875, LA 1977.). This Court believes that Mr. Crawford was aware that the property was burdened by a right-of-way, assumed erroneously that it was 30' in width, and was negligent in not making further inquiry.
"An apparent servitude (i.e. road)... is real charge of which it is purchasers business not to be ignorant and against which purchaser cannot claim warranty."
Furthermore, Mr. Crawford testified that although he had questions in his mind regarding the title opinion that he made no inquiry of Mr. Porter as to the meaning and import of some of the words *742 contained therein. After hearing all the evidence in the case, the Court is of the opinion that petitioner in this case is not totally free from fault in constructing a portion of his building on a portion of the property which is apparently covered by State of Louisiana Highway No. 5 right-of-way.
We find that the trial court clearly erred in concluding that the plaintiff was fifty percent negligent under these circumstances. In Richmond v. Zapata Development Corporation, supra, relied upon by the trial court, plaintiff, a purchaser of land, brought an action against his vendor seeking recovery for partial eviction, alleging that a mineral lease to which the land was subject was a charge upon the property against which the vendor had given its warranty. The Supreme Court held that simple inspection of the premises would have apprised the purchaser of the existence of a mineral lease due to the presence of drilling structures; therefore, the purchaser, who had made no examination of either the title or the premises prior to his purchase, could not recover for partial eviction.
Richmond v. Zapata, supra, is factually inapposite to the instant factual circumstances. The right of way granted in the instant case was not marked in any manner upon the property. Moreover, in the case at bar, plaintiff's suit is not against his vendor in warranty, but is instead against two professionals hired by the plaintiff to check the title on the property, and properly mark the boundaries so that he might construct his building within the usable portion of his land. Consequently, we find that plaintiff should bear no responsibility for his own damage in this case.
Additionally, as to defendant attorney, we conclude that it was not plaintiff's responsibility to question his attorney about matters regarding the servitude, for if his attorney had performed as he stated in his title opinion letter, the servitude would have been located and should have been brought to the attention of the plaintiff without his having to question the attorney on this point.[3] By way of analogy, see Lupo v. Lupo, 475 So.2d 402 (La.App. 1st Cir.1985), which holds that an attorney should inform his client, who was signing as a surety on a large bond, of every possible implication of that action; and Gill v. DiFatta, 364 So.2d 1352 (La.App. 4th Cir.1978), and Muse v. St. Paul Fire and Marine Insurance Company, 328 So.2d 698 (La.App. 1st Cir.1976), which hold that an attorney who accepts employment holds out to his client that he possesses the knowledge and skill necessary to handle the matter for which he is employed. If that service involves execution of a contract by the client, the attorney must scrutinize the contract and disclose the full import of the instrument and the consequences of its execution.
We now come to the difficult task of apportioning fault between defendant attorney and defendant surveyor. A viable argument could be made that either one should bear more responsibility than the other. However, we conclude that each defendant should respond equally to plaintiff because if either had performed according to the community standards of their profession, the offending servitude would *743 have been found and plaintiff's harm avoided. Accordingly, we find that defendant Porter was fifty (50%) percent at fault in causing plaintiff's harm and defendants Gray and Gray & Associates were fifty (50%) percent at fault in causing plaintiff's harm.

DAMAGES
Having determined the proper allocation of fault, we must address plaintiff's argument that the damages awarded by the trial court were insufficient and simultaneously address defendant's argument that the damages awarded were excessive.
In written reasons for judgment, the trial court awarded damages in the following amounts for a total of $43,782.10:
(1) Loss of net income, $18,000 representing a figure of $3,000 per month for six months;
(2) Repair to the building, $20,000;
(3) Lost interest, $782.10; and
(4) Mental anguish, $5,000.
Defendants Gray and Gray & Associates argue that the $20,000 award for repair to the building was inappropriate based on the evidence.
Raymond Boyd was tendered as an expert in construction at trial. He testified that moving the building into the usable portion of plaintiff's lot could be done for $25,000. He further testified that instead of moving the building, it would be possible to cut off the corner of the building situated within the right of way, but to do so would render useless a number of square feet and would also make it difficult to utilize the corner of the building. He testified that this process would entail underpinning and reconstructing the wall at a cost of approximately $10,000. However, Mr. Boyd testified that although the foundation would still be substantial, it would be impossible to determine the extent of damage that would be sustained by the slab during such a procedure.
In response, defendant produced the testimony of Joseph Johnson, a general contractor, who was qualified as an expert in the construction business. Mr. Johnson testified that the approximate nine foot by twelve foot area of the building which projected into the fifty foot right of way could be removed and rebuilt at the rear of the building for a cost of $2,600. He testified that the cost of total removal of the building from the property would be $2,000, and that if the building was removed and rebuilt on the property in a different location, the cost would be $11,000.
It is axiomatic that where damages cannot be precisely and mathematically determined, the trial judge is vested with reasonable discretion in making awards for damage. Furthermore, where there is considerable variance in estimated damages, which renders calculation thereof difficult, much discretion is accorded to the trial judge to determine the amount of the award. Watters v. City of Bastrop, 445 So.2d 73 (La.App. 2d Cir.1984). See also Smith v. Town of Logansport, 395 So.2d 888 (La.App. 2d Cir.1981), writ denied 400 So.2d 1379 (La.1981); Sahuque Realty Company v. Employers Commercial Union Insurance Company of America, 327 So.2d 563 (La.App. 4th Cir.1976), writ denied 330 So.2d 617 (La.1976), 331 So.2d 496 (La.1976) and cases cited therein.
Considering the variance between the estimates to remove the building and rebuild at a slightly different location on the tract, we discern no clear error in the trial judge's assessment of damages in this regard. Therefore, that award will not be disturbed by us on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Additionally, defendants Gray and Gray & Associates argue that the mental anguish award is unsupported by record evidence. We must agree with defendants' argument in this respect. Plaintiff adduced absolutely no evidence to support this award. Consequently, the award must be appropriately reduced. See Berry v. Farmer, 459 So.2d 150 (La.App. 2d Cir. 1984).
Turning now to plaintiff's complaint as to the inadequacy of the damages assessed for loss of net income, we reiterate that the trial judge awarded $18,000 or $3,000 per month for six months to *744 compensate plaintiff for this element of damages, noting that the defendants' expert, a Mr. Perrin, gave figures on the net profit of a convenience store which were more realistic than plaintiff's expert witness's figures.
Gary L. Perrin, who is engaged in the retail grocery convenience business, testified at trial on behalf of defendants. Mr. Perrin testified that in his opinion the location was too small and also was of a temporary nature with insufficient traffic to justify the situation of a store on that property. He noted that in his comparable convenience store he nets only $34,250 yearly.
On behalf of plaintiff, Fred Ordelheide, a certified public accountant, testified as an expert in accounting, tax, finance and real estate investment pertaining to convenience stores. Mr. Ordelheide opined that the yearly net for such a store would be approximately $83,000 or $84,000. Therefore, he calculated that the amount lost during the three months that the convenience store was not in operation due to the dispute over the right of way was approximately $37,500.
However, during cross examination of this witness, it was adduced that he did not take into consideration the population density of the area, and compared the store with a convenience store located in Bossier Parish. He also stated that the type of store he would have recommended to be placed on the lot would have been a modern, typical, 7-11 type of convenience store, which could not have been constructed within plaintiff's $20,000 amount allocated for construction costs. He also stated that to produce this volume of revenue, he would assume optimum position on the lot and parking for about twenty cars. Other testimony established that if the building was moved so as to avoid the right of way area, plaintiff could not provide enough room for twenty parking spaces.
Therefore, based on the possibly inaccurate assumptions of plaintiff's expert, the trial court was not clearly wrong in preferring the figures of Mr. Perrin to those of Mr. Ordelheide. Consequently, this argument lacks merit.
In conclusion then, we find that the trial court manifestly erred in finding that the attorney, Steven Porter, was free from fault, in finding that plaintiff shared the legal responsibility for his harm, and in awarding damages for plaintiff's mental anguish.
In accordance with the reasons expressed herein, the judgment of the trial court is reversed in part, amended in part, affirmed in part and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, John L. Crawford, and against the defendants Gray & Associates and Ray Gray, and Steven L. Porter and his insurer, New England Reinsurance Corporation, in solido, in the full sum of Thirty-Eight Thousand, Seven Hundred Eighty-Two and 10/100 ($38,782.10) Dollars.
All costs of this appeal are to be borne by defendants.
REVERSED IN PART, AFFIRMED IN PART, AMENDED IN PART, and RECAST.
NOTES
[1] Plaintiff originally sued Hartford Insurance Company but amended his petition to name the correct insurer, New England Reinsurance Corporation.
[2] See also LaBorde v. Haynes, 398 So.2d 5 (La. App. 1st Cir.1980), which holds that legal malpractice of rendering an incorrect title opinion is grounded in tort. But see Cummings v. Skeahan Corporation, 405 So.2d 1146 (La.App. 1st Cir.1981), which held with reliance upon Jackson v. Zito, 314 So.2d 401 (La.App. 1st Cir. 1975), writ denied, 320 So.2d 551, 553 (La.1975), that a malpractice action against an attorney partakes of elements both ex contractu and ex delicto. In Cummings, the court held that plaintiff could elect to file suit in either tort or contract against an attorney who rendered a title opinion neglecting to note the existence of a mineral lease on the property in question. The court also noted that the allegations made in that suit were purely for damages caused by breach of contract. However, the rationale of Jackson v. Zito, supra, was overruled in Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983). Cherokee notes that Cummings and other appellate court decisions involving legal malpractice which state that a malpractice action against an attorney gives rise to actions both in tort and in contract are suspect under the Supreme Court decision of Sciacca v. Polizzi, 403 So.2d 728 (La.1981). Sciacca overruled decisions of the First and Fourth Circuits which held that a negligent act of malpractice by a physician could constitute either a tort or a breach of contract for services entered into between the doctor and his patient, even when there was no guarantee of a specific result by the physician. Although the court in Cummings noted that the same result would obtain in that case even if the Sciacca medical malpractice rule were applied to legal malpractice since the issue involved the rendering of an incorrect title opinion which could be warranted or guaranteed, we agree with the court in American Title Insurance Company v. Seago that under these limited circumstances, the language employed does not constitute a guarantee of title to the property.
[3] Of interest is the case of Meyers v. Imperial Casualty Indemnity Company, 451 So.2d 649 (La.App. 3d Cir.1984). In that case which involved an action against an attorney for legal malpractice, the court concluded that the jury was clearly wrong in determining that the plaintiff was twenty percent at fault. The Court of Appeal concluded that the omissions on the part of plaintiff did not constitute legal fault on his part. However, the court went on to question the viability of comparative negligence in a legal malpractice action:

In an attorney-client relationship, a client is entitled to rely on the expertise and diligence of his attorney. This is particularly true where, as in the present case, it is demonstrated that the client had little experience or knowledge regarding the matter which the attorney was engaged to handle. An omission or oversight by a client will not constitute legal fault where that omission is a result of the client's legitimate reliance on his attorney. In other words, in such a case, the duty of an attorney extends to the protection of his client against that client's own substandard conduct. [footnote omitted]
This observation seems valid but is not pertinent to a decision in the instant case.