# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-681

**ALEASHIA CLARKSTON**

**VERSUS**

**IKE FUNDERBURK**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 100,264
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and David E. Chatelain[*], Judges.

**CHATELAIN, J., concurs and assigns additional reasons.**

**AFFIRMED.**

**J. Arthur Smith, III**
**Smith Law Firm**
**830 North Street**
**Baton Rouge, LA 70802**
**Telephone: (225) 383-7716**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Aleashia Clarkston**

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**James H. Gibson**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**Telephone: (337) 291-1300**
**COUNSEL FOR:**
  **Defendant/Appellee - Ike Funderburk**

**THIBODEAUX, Chief Judge.**

The plaintiff-appellant, Aleashia Clarkston, appeals the trial court's judgment dismissing her legal malpractice suit against the defendant-appellee, Ike Funderburk, for failure to post bond as security for costs. Finding no abuse of discretion in the trial court's judgment, we affirm.

I.

## ISSUES

We must decide:

(1) whether the trial court abused its discretion in requiring the plaintiff to post bond as security for costs in this case; and

(2) whether the trial court erred in dismissing the defendant when the plaintiff failed to post the bond.

II.

## FACTS AND PROCEDURAL HISTORY

Ms. Clarkston was a teacher with the Iberia Parish School Board. She had been on a medical leave of absence since September 2012, when, in April 2013, she was terminated by the school board on the basis of abuse of leave policy. Ms. Clarkston asserts that she was wrongfully terminated, denied due process as a tenured employee, and publicly defamed. Attorney Ike Funderburk was contracted through the Louisiana Association of Educators (LAE) to represent Ms. Clarkston in her case against the school board. Approximately fourteen months later, Mr. Funderburk informed Ms. Clarkston that he was no longer affiliated with LAE and, thus, no longer representing her in her case against Iberia Parish School Board.

LAE assigned another attorney to the case. Ms. Clarkston learned that a suit had never been filed on her behalf against Iberia Parish School Board and that her claims against the school board had prescribed in April 2014. Filing as a pro se plaintiff, Ms. Clarkston filed a legal malpractice suit against Mr. Funderburk for his failure to file suit on her behalf against the school board.

Mr. Funderburk responded with a motion to set bond as security for his litigation costs, pursuant to La.R.S. 13:4522. He then answered the suit asserting that Ms. Clarkston's rights had been waived before he became involved in her representation. He further asserted that he informed Ms. Clarkston of the waiver and that nothing could be done for her.

Following an October 26, 2015 hearing on the motion to fix bond, the trial court entered judgment setting the security bond for the requested amount of $10,000.00, to be paid within forty-five days from the October 26 hearing date. Ms. Clarkston did not file an opposition to the motion to fix bond or challenge the necessity for the bond. By ex-parte motion, Ms. Clarkston sought a thirty-day extension of time to post the bond, due to financial hardship. The trial court granted the extension. In January 2016, Mr. Funderburk filed a motion to dismiss the suit against him due to the plaintiff's failure to post the bond set by the court.

Following a February 22, 2016 hearing on the motion to dismiss, the trial court entered judgment in favor of Mr. Funderburk, dismissing Ms. Clarkston's suit due to her failure to post the required bond.

Ms. Clarkston enrolled new counsel, who filed a motion for devolutive appeal from the February judgment dismissing her suit.

Counsel for Ms. Clarkston filed an ex parte motion to proceed on appeal in forma pauperis. The motion on behalf of Ms. Clarkston sought "to exercise the privilege granted pursuant to La.C.C.P. art. 5181."

On appeal, Ms. Clarkston asserts that the trial court erred in requiring her to post the bond, and in dismissing her suit for failure to post the bond. She argues that the dismissal should be vacated because she was "subsequently permitted to proceed *in forma pauperis.*" She further raises the issue that requiring her, as a pauper, to post bond, "has and will deny her access to the courts in violation of her due process rights and her rights guaranteed by La.Const. art. I, § 22." For the following reasons, we affirm the judgment of the trial court.

III.

## STANDARDS OF REVIEW

The trial court has the discretion to determine both the necessity for posting a bond to secure the cost of litigation and for fixing the amount of the bond for costs. *Whitson v. American Ice Co.*, 164 La. 283, 113 So. 849 (1927). Accordingly, those matters are reviewed under an abuse of discretion standard of review. Questions of law, such as the proper interpretation of a statute, are reviewed by the appellate court under the de novo standard of review. *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So.3d 36 (citations omitted). Thus, in this case, we apply the de novo standard of review to the trial court's dismissal of the plaintiff's case under the governing statute.

## IV.

## LAW AND DISCUSSION

### *La.R.S. 13:4522 and Security For Costs*

The governing statute in this case is La.R.S. 13:4522. It is found in Louisiana Revised Statutes, under Title Thirteen, "Courts and Judicial Procedure," and Chapter Twenty-Eight, "Costs." Louisiana Revised Statutes 13:4522 is entitled, "Defendant may demand security for costs," and it states as follows (emphasis added):

> The defendant before pleading in all cases may by motion demand and require the plaintiff or intervenor to give security for the cost in such case, and on failure to do so within the time fixed by the court such suit or intervention, as the case may be, shall be dismissed without prejudice. This section *shall not apply* to the Parish of Orleans and to cases *brought* in forma pauperis, nor to the state or any political subdivision thereof.

While the appellant argues that the statute does not apply to paupers, the operative word in the statute is that it does not apply to cases "*brought*" in forma pauperis. Throughout two hearings and the passage of several months, Ms. Clarkston never sought to apply for pauper status. She did not file for pauper status until four months after her suit was dismissed, and that filing was for purposes of her appeal. Louisiana Revised Statutes 13:4533 states: "The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs." The advance posting of a bond, "secures the payment of those expenses incurred by the defendant in defense of the suit which may be taxed as court costs and which the plaintiff may finally be condemned to pay. Among these costs are . . . the fees of

4

expert witnesses and the costs of taking their depositions, when necessary." *Carter v. Phillips*, 337 So.2d 187 (La.1976) (citing *Whitson*, 113 So. 849).

In this case, the defendant's motion for bond was filed and time-stamped by the clerk of court a few minutes before the filing of the defendant's answer to the suit. At oral argument, the question arose as to whether this almost contemporaneous filing of the motion for bond, along with the answer, satisfied the first sentence of La.R.S. 13:4522, which states that "before pleading" the defendant may require the plaintiff to post bond for costs. In response, the defendant points out, and the record confirms, that (1) the timeliness of the filing was never objected to in the trial court; and (2) the issue of timing was not raised in the appeal nor assigned as error in the appellant's brief. Pursuant to Uniform Rules, Courts of Appeal, Rule 1-3, if the issue is not raised in the trial court and assigned as error and briefed on appeal, we are not required to address it on appeal. Notwithstanding, under the same Uniform Rule, we may consider such issue if justice clearly requires it. In this case, we do not find that justice requires the invocation of the exception over the general precept of Rule 1-3[1] where timeliness was not raised at trial, nor in the appellate brief.

---

[1]Uniform Rules, Courts of Appeal, Rule 1-3, entitled "Scope of Review," states:

The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by LSA-Const. Art. 5, § 10(B), and as otherwise provided by law. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.

*Necessity for Bond*

It has been well-settled since *Whitson,* 113 So. 849, that the defendant bears the burden under the statute of showing how large a bond is necessary to protect him. Ms. Clarkston contends on appeal that the trial court erred in ordering her to post a bond for costs because Mr. Funderburk did not meet his burden of showing the necessity for a bond in this case. Mr. Funderburk points out that Ms. Clarkston did not challenge the necessity for the bond in the trial court. This is true. However, where Ms. Clarkston was appearing pro se, and where she now raises a fundamental issue on the burden of proof, and where justice to both parties will be served by this review, we will address the issue. The record here reveals that Mr. Funderburk did support his motion requesting bond by showing multiple, specific reasons that a bond was needed in this case. Mr. Funderburk's motion stated:

> In the instant matter, Plaintiffs causes of action and damages prove the need for a legal expert to establish the standard of care required of Funderburk as well as causation, an expert in teacher tenure and wrongful discharge of tenured educators, and potentially an economist for evaluation of damages. A conservative estimate for the cost of a legal expert alone ranges from $10,000 to $15,000 through discovery and trial.
>
> Moreover, retaining the experts is only the tip of the proverbial litigation iceberg. Once the experts are retained and opinions secured, discovery and/or trial depositions will be taken. The experts will testify at trial. Given this Honorable Court's extensive experience in taxing costs of litigation, a conservative estimate of the costs of the expert retention and discovery alone exceeds $10,000. Thus, Funderburk respectfully requests that Plaintiff be required to post a $10,000 bond.

6

Mr. Funderburk supported his motion and memorandum in the trial court with a citation to *MB Industries, LLC v. CCNA Ins. Co.*, 11-303 (La. 10/25/11), 74 So.3d 1173, which states:

> In order to establish a valid legal malpractice claim, MBI must show evidence sufficient to convince a reasonable trier of fact of (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. *Teague v. St. Paul Fire and Marine Ins. Co.*, 07-1384 (La.2/1/08), 974 So.2d 1266, 1272. MBI has the burden of proving the defendant failed to "exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality." *Ramp v. St. Paul Fire and Marine Ins. Co.*, 263 La. 774, 269 So.2d 239, 244 (1972). Typically, a plaintiff will retain an expert witness both to establish the standard of care for prudent attorneys in the relevant locality and to show the defendant's actions fell below the standard of care. See *Sunset Ins. Co. v. Gomila*, 02-633 (La.App. 5 Cir. 12/30/02), 834 So.2d 654, 657; *Morgan v. Campbell, Campbell & Johnson*, 561 So.2d 926, 929 (La.App. 2 Cir.1990).

*Id.* at 1184.

The *MB* court explained that, "because MBI did not introduce any competent expert witness testimony or affidavit, summary judgment for the defendants is proper unless the undisputed facts establish malpractice which was so obvious that a lay person would recognize it as falling beneath the necessary standard of care." *Id.* at 1185. Such was not the case in *MB*, nor is it the case in the matter before us. In assessing the need for an expert, the *MB* court stated that vague allegations were not sufficient to prove malpractice:

> MBI makes no attempt to explain how this alleged additional testimony or evidence could have changed the outcome of the case. And again, this is precisely the kind of allegation which requires expert testimony to establish whether Durio's actions fell beneath the applicable standard of care. Without the assistance of an expert, a lay jury would have no basis for deciding whether the

7

> decision to call a particular witness or introduce a certain document was within the standard of care for a reasonably competent attorney in the Lafayette area.

*Id.* at 1186 (footnote omitted).

In discussing the loss of a box of documents without making copies as one act by the attorney that was "negligent under any standard," the *MB* court then underscored the third element of proof in legal malpractice cases, an unfavorable outcome "caused" by the negligence. This means proving not just negligence, but also proving that the ultimate outcome would have been in favor of, rather than against, the plaintiff but for the negligent act or omission by the plaintiff's attorney:

> [I]t is not enough to simply show Durio acted negligently. MBI must also introduce evidence of causation. Although this Court disavowed the "case within a case" doctrine in *Jenkins v. St. Paul Fire & Marine Ins. Co.*, 422 So.2d 1109, 1110 (La.1982), we reiterated that causation "is an essential element of any tort claim." At the very least, MBI must establish some causal connection between the alleged negligence and the eventual unfavorable outcome of the litigation. *Id*. It has not done so.

*MB*, 74 So.3d at 1187.

In the present case, at the hearing on the motion to set bond, Mr. Funderburk's attorney explained to the court that by the time Ms. Clarkston's case reached Mr. Funderburk, her rights had already been waived by two events that occurred with the school board. He further explained that her case arose during a time that the laws changed limiting the rights of teachers to challenge the actions of the school board. This was a reference to tenure law. Mr. Funderburk's counsel also informed the court that the applicable law involved constitutional issues as well. In brief, Mr. Funderburk cited the necessity for a legal malpractice expert, a

tenure law expert, and possibly an economist to assess the loss of income. At the hearing he argued that the amount of $10,000.00 for opinions, depositions, and testimony from pre-trial through trial was on the low side. Ms. Clarkston had not filed an opposition to the motion. Thus, the trial court specifically asked Ms. Clarkston whether she understood what was being asked for, why it was being requested, under what authority it was requested, and whether she had anything further to tell the court. This colloquy followed:

> THE COURT: I don't mean to interrupt you. But, for today, did you get a copy of Mr. Gibson's memorandum?
>
> MS. CLARKSTON: Yes, I did.
>
> THE COURT: All right. And he's asking for a bond to be set. You understand that?
>
> MS. CLARKSTON: Yes
>
> THE COURT: And there is a codal article that is cited. Did you read that?
>
> MS. CLARKSTON: Yes, I did.
>
> THE COURT: All right. And you understand that they have by law and under that code, codal article, to ask for the bond that he's requesting, ten thousand dollars ($10,000.00), to be set by this Court in order to proceed with litigation. Do you understand that?
>
> MS. CLARKSTON: Yes.
>
> THE COURT: Do you have any questions in regards to that?
>
> MS. CLARKSTON: No, I don't.
>
> THE COURT: Do you have anything further that you want the Court to know at this time.
>
> MS. CLARKSTON: No. I just feel ten thousand dollars ($10,000.00) is a substantial amount of monies for me to have to come up with to work -- just to hear my case, have it litigated.

Based upon the motion to fix bond, supporting memoranda, and oral arguments at the hearing, and upon finding that the bond request was reasonable, the trial court granted Mr. Funderburk's motion and set the deadline for posting the bond at forty-five days. Ms. Clarkston, an educator, stated that she had read the statute which clearly states that the bond requirement did not apply to those bringing suit as a pauper. Yet, she failed to apply for pauper status and did nothing during the six weeks given for posting the bond, or during the thirty additional days that she received on her request for an extension, to improve her position.[2]

Regarding the showing of necessity for posting bond, the supreme court in *Carter* agreed that it was "within the discretion of the trial judge to determine whether the showing required may be made by the allegations in the motion, supporting affidavits, the arguments of counsel at the hearing, introduction of evidence, or in any other manner which the trial judge deems appropriate." *Id.* at 189. In *Carter*, the court found an abuse of discretion where the trial court had granted a doctor's request for bond to cover the depositions of five medical experts. Such is not the case here, where Mr. Funderburk reasonably requested a bond to cover possibly three experts from three different disciplines: legal standard of care, teacher tenure and wrongful discharge, and possibly an economist to evaluate loss of earnings.

Ms. Clarkston has cited various cases including *Watkins v. Sheppard*, 278 So.2d 890 (La.App. 1 Cir. 1973), where the courts found that no expert was

---

[2]Ms. Clarkston cited an auto accident, health problems, and injuries to her daughter as intervening events affecting her situation. At the hearing on the motion to fix bond, she argued that Mr. Funderburk was working on her case for a year before he withdrew, but failed to file her case during that time. Mr. Funderburk's attorney briefly responded that they took issue with most of her assertions, then stated, "-- I knew she was going to talk. I mean, with the school board, she was on a reality show, *Super Nanny*, and that's why it all started way before Ike got involved."

required for litigating "obvious" acts of negligence. Here, however, the issues are more complex, as our brethren of the fourth circuit comprehensively stated almost thirty years ago:

> The [plaintiffs] argue that the trial court is familiar with standards of care by attorneys in the local community and, therefore, expert testimony is not necessary in this case. We do not agree. The Supreme Court, in dicta, has indicated that it would find legal malpractice in the absence of expert testimony when an attorney ignores an "obvious" legal problem. *See Ramp*, 269 So.2d at 244. The First Circuit also has indicated that there may be some cases in which the trial court's own knowledge of the standards of care by an attorney in the local community may substitute for expert testimony. *See Watkins v. Sheppard*, 278 So.2d 890, 892 (La.App. 1st Cir.1973) and *Muse v. St. Paul Fire and Marine Ins. Co.*, 328 So.2d 698, 702 (La.App. 1st Cir.1976) (following *Watkins*). However, neither *Ramp*, *Watkins*, nor *Muse* supports the proposition that expert testimony is never required in any legal malpractice case. With the complexity and diversity of contemporary law, litigation, and legal practice, it should not be surprising to find legal malpractice cases in which expert testimony as to the standard of care is essential. This is such a case.

*Houillon v. Powers and Nass*, 530 So.2d 680, 682 (La.App. 4 Cir. 1988). The cases cited in *Houillon* above are among those cited by Ms. Clarkston here.

We find no abuse of discretion in the trial court's granting of the defendant's motion for the posting of bond.

### *Governing Statutes and Their Applicability to Paupers*

Citing La.Code Civ.P. art. 5181, Ms. Clarkston further argues that La.R.S. 13:4522 does not require the advance posting of bond in the case of paupers. Article 5181, entitled "Privilege of litigating without prior payment of costs," states that "an individual who is unable to pay the costs of court because of his poverty and lack of means may prosecute or defend a judicial proceeding in

11

any trial or appellate court without paying the costs in advance or as they accrue or furnishing security therefor." However, as pointed out by Mr. Funderburk, this exception for pauper status is a privilege, not a right, and it must be applied for. We must agree, as the title itself to La.Code Civ.P. art. 5181 states that it is a privilege. Likewise, the plaintiff's own petition for pauper status sought "to exercise the privilege granted pursuant to La.C.C.P. art. 5181."

Here, we find that the most factually and legally analogous case is *Harrison v. Minardi*, 07-514 (La.App. 3 Cir. 10/31/07), 968 So.2d 1221. There, like Ms. Clarkston in this case, the plaintiff-appellant did not seek pauper status until after the deadline for posting bond had passed. Consequently, a panel of this court found no error in the trial court's dismissal of the defendant physician in that medical malpractice case. *Id.* In *Harrison*, the court stated as follows:

> The Code of Civil Procedure provides a procedure for one who cannot afford to pay court costs to prosecute litigation without paying court costs in advance. La.Code Civ.P. arts. 5181- 5188. This is a privilege, not a right, and one seeking to take advantage of this privilege must apply for permission to do so and must submit specific documentation. La.Code Civ.P. art. 5183. The request to exercise this privilege can be made in the applicant's first pleading or later in an ex parte motion. *Id.* The grant of this privilege is within the trial court's discretion, and denial of the privilege can be reversed only if the trial court abused its discretion.

*Id.* at 1224.

Here, as in *Harrison,* Ms. Clarkston did not apply for pauper status until after dismissal of her suit, and the grant of pauper status does not operate retroactively under such facts. Had she applied before the bond was set and given Mr. Funderburk the opportunity to traverse her proof of poverty, pursuant to

La.Code Civ.P. art. 5184,[3] the trial court would have had the discretion to grant her request at that time. In this case, Ms. Clarkston failed to make the application even while asserting to the trial court that she had read and understood La.R.S. 13:4522, which states in the last sentence that it does not apply to suits *brought* under pauper status. The trial court subsequently granted Ms. Clarkston pauper status when she applied for it on the appeal, but nothing in the statue provides for retroactive effect of a status not previously sought or documented.

When Ms. Clarkston failed to post the bond pursuant to the order setting the forty-five-day deadline, Mr. Funderburk moved for a dismissal. In February 2016, four months after the order to post bond in October 2015, a hearing was held on the motion to dismiss. At the February 2016 hearing, Ms. Clarkston stated that she had filed for an extension of time on the bond, which the court located in the record. The request for a thirty-day extension had been granted in December 2015; but, as the court pointed out, they were now in February 2016, and no bond had been posted. Stating that the law was clear, the trial court then granted the motion to dismiss.

Louisiana Revised Statutes 13:4522 provides that upon a plaintiff's failure to give security for costs within the time fixed by the court, the suit "shall

---

[3]A. An adverse party or the clerk of the court in which the litigation is pending may traverse the facts alleged in the affidavits of poverty, and the right of the applicant to exercise the privilege granted in this Chapter, by a rule against him to show cause why the order of court permitting him to litigate, or to continue the litigation, without paying the costs in advance, or as they accrue, or furnishing security therefor, should not be rescinded. However, only one rule to traverse the affidavit of poverty shall be allowed, whether the rule is filed by an adverse party or the clerk of court.

B. The court shall rescind its order if, on the trial of the rule to traverse, it finds that the litigant is not entitled to exercise the privilege granted in this Chapter.

La.Code Civ.P. art. 5184.

13

be dismissed without prejudice." Thus, while the trial court has discretion in determining whether a bond is necessary, and in fixing the amount of the bond, once the order to post bond is issued and the amount is set, and no bond is forthcoming, the trial court is required under the statute to dismiss the plaintiff's action. In reviewing this legal question de novo, we find no error on the part of the trial court which followed the statute's mandate and dismissed Ms. Clarkston's suit.

### Constitutionality Issue

In the alternative, Ms. Clarkston argues for the first time on appeal that because she was a pauper, requiring her to post bond denied her access to the courts in violation of due process rights guaranteed by La.Const. art. 1, § 22. However, she did not raise the issue of constitutionality in the trial court, and we cannot address it now. "The unconstitutionality of a statute is not properly before an appellate court unless it was specifically pled in the trial court, and the grounds for the claim were particularized." *Harrison*, 968 So.2d at 1224 (citing *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-450 (La. 4/27/07), 956 So.2d 573). At oral argument, the plaintiff's attorney contended that his argument of unconstitutionality of La.R.S. 13:4522 was on an "as applied" basis, not upon the unconstitutionality of the statute itself. However, this does not change the requirement that the issue be raised in the court below.

The Louisiana Supreme Court addressed this issue in *State v. Overstreet*, 12-1854 (La. 3/19/13), 111 So.3d 308. There, the trial court's judgment, declaring two criminal statutes "unconstitutional as applied to a

defendant judged not guilty by reason of insanity," was reversed. *Id*. at 317. The court stated as follows:

> The state in the present case contends that respondent has not sufficiently particularized the grounds of his claim that the statutory provision requiring sex offender registration is unconstitutional. The state's contention has merit. This Court has expressed the challenger's burden as a three-step process. First, a party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statute must be specially pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized. Further, a district court may not sua sponte rule that a statute is unconstitutional, nor can it declare a statute unconstitutional on grounds other than those asserted by a movant.
>
> At best, respondent merely claimed the law was "arbitrary, capricious and makes no sense" because he was not convicted of a crime, but instead pled not guilty by reason of insanity. He seemed to be claiming an equal protection violation, but never explained the basis of that claimed violation. As a result of this lack of particularization, the state was afforded insufficient opportunity to brief and argue in response.

*Overstreet*, 111 So.3d at 316-17. *See also State v. Heard*, 15-873 (La.App. 3 Cir. 4/6/16) (unpublished opinion), 2016 WL 1358289. Accordingly, in this case as well, the due process issue is not properly before us, even on an "as applied" basis.

## V.

## <u>CONCLUSION</u>

Based upon the foregoing, we affirm the judgment of the trial court dismissing Ms. Clarkston's suit. Under "Cross References" La.R.S. 13:4531 states that an "appellate court may tax costs as deemed equitable, see C.C.P. art. 2164." Because we are affirming the trial court's dismissal in favor of the defendant-appellee, Ike Funderburk, all costs of this appeal are assessed to the plaintiff-

appellant, Aleashia Clarkston. Because Ms. Clarkston finally obtained pauper status for this appeal, relieving her from having to post bond for costs in advance, that does not relieve her from the requirement to pay all costs which are taxed against her. *See Ardoin v. Swint*, 315 So.2d 839 (La.App. 3 Cir. 1975).

**AFFIRMED**.

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-681

## ALEASHIA CLARKSTON

## VERSUS

## IKE FUNDERBURK

**CHATELAIN, Judge, concurring for additional reasons.**

Although at the end of the day[1] I concur in the opinion of the court, I nevertheless write separately to discuss self-representation and its effect on the requisite impartiality of the trial court.

It appears that the self-represented litigant is a growing concern in Louisiana.[2] Initially, I note the Louisiana District Judges Association Self-Represented Litigation Subcommittee proposed changes to Louisiana Judicial Canon 3(A)(4), the adjudicative responsibilities of the trial judge. Effective March 18, 2013, the Louisiana Supreme Court approved amendments to Canon 3(A)(4) to provide, in pertinent part, "A judge may make reasonable efforts, consistent with the law and court rules, to facilitate the abilities of all litigants, including self-represented litigants, to be fairly heard, provided, however, that in so doing, a judge

---

[1] The record shows this self-represented litigant is educated; she is in fact an educator; she was legally astute enough to enter a preliminary default in this matter; she also filed a motion for an extension of time within which to post her bond for costs; and she shows some familiarity with legalese for at one point she filed a pleading "pro se."

[2] As later described *infra*, there exists a large variety of resources in Louisiana to aid the self-represented litigants. To me this speaks volumes to the existence of this growing class of litigants.

should not give self-represented litigants an unfair advantage or create an appearance of partiality to the reasonable person."

More importantly, in an attempt to address the challenges the self-represented litigant presents to the trial court,[3] Canon 3(A)(4) now has a commentary which states:

> Steps judges may consider in facilitating the right of self-represented litigants to be heard, and which (they might find) are consistent with these principles include, but are not limited to:
>
> (1)   making referrals to any resources available to assist the litigant in preparation of the case;
>
> (2)   providing brief information about the proceeding and evidentiary and foundational requirements;
>
> (3)   asking neutral questions to elicit or clarify information;
>
> (4)   attempting to make legal concepts understandable by minimizing use of legal jargon; and
>
> (5)   explaining the basis for a ruling.

Nevertheless, as in so many other instances, it is in the application of these standards that difficulties arise. From the outset, as evident in this case, the legislature has incorporated legal jargon in La. R.S. 13:4522. In particular, the statute is made inapplicable "to cases brought in forma pauperis." Although "in forma pauperis" may be a term of art easily understandable within the legal community, the same may not be

---

[3]    Courts have held pro-se litigants assume responsibility for their lack of knowledge of the law. *Food Perfect, Inc. v. United Fire & Cas. Co.*, 2012-2492 (La.1/18/13), 106 So.3d 1007, 108. *See also Ledbetter v. Wheeler*, 31,357 (La.App. 2 Cir. 12/9/98), 722 So.2d 382, 384 ("[a]lthough we concede that Ledbetter, as a layperson, was representing himself, a prose litigant assumes all responsibility for his own inadequacies and lack of knowledge of procedural and substantive law.")

true among the general populace. Alone this may be problematic. However, when read in conjunction with Canon 3 it becomes even more so for the trial judge who is required to be impartial, but who is permitted "to facilitate the abilities of all litigants, including self-represented litigants." The facts of the present case highlight that problem.

As the opinion of this court shows, the trial judge questioned the self-represented litigant during the hearing on the defendant's demand for security for costs. The trial judge asked the self-represented litigant: (1) if she'd received the defendant's memorandum; (2) if she understood that the defendant was asking that a bond for cost be set; (3) if she'd read the codal article cited in support of the bond for cost; (4) if she understood that she was being asked to post a $10,000.00 bond in order to proceed with the litigation. Although she responded "yes" to the trial judge's questions, she opined the bond amount was substantial for her to provide.

Under the facts of the case now before us, see n. 1, *supra*, I respectfully suggest that to require the trial judge in the present case to have explained the term "in forma pauperis" and all that entailed, would have caused the trial judge to suggest a defense to the defendant's motion. Such a position, in my view, would have placed the trial judge in an untenable position, one that Canon 3 guards against.

I suggest there are avenues available to ameliorate this seemingly growing concern. At the heart of this solution are means that provide a buffer between the trial judge and the self-represented litigant. Two such examples include: (1) the Pro Se Manual of this court which is intended to assist non-attorneys in the appellate and supervisory writ process; and (2) self-help guides such as that the 9th Judicial District Court developed on its web site to refer self-represented individuals to resources[4] that may assist them. However, to have these resources available is but the first step. Notwithstanding the availability of these resources, it seems crucial that the dissemination of such information to the self-represented litigant from the very inception of litigation is essential to further the search for justice and foster the impartiality of the trial judge. To do otherwise keeps valuable information hidden from the self-represented litigant, thwarts justice, and places an undue burden on trial judges.

For these reasons, I respectfully concur.

---

[4] Among those resources enumerated are: (1) a brochure "Representing Yourself in Court" produced by the LSBA Access to Justice Pro Se Subcommittee; (2) Resources for Self-Represented Litigants developed by the Law Library of Louisiana; (3) legal information and assistance via telephone provided by the Louisiana Civil Justice Center; and (4) online legal information gathered at Louisiana LawHelp.