# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-267


JAN ALFRED LANGSTON

VERSUS

DR. SYED FAZAL-UR-REHMAN


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20124174
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

## VAN H. KYZAR
## JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Van H. Kyzar, Judges.


**AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED.**

**John Paul Charbonnet**
**The Glenn Armentor Law Corporation**
**300 Stewart Street**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Chalyn Renaé Alfred**
    **Kendrick Alfred**

**Michael W. Adley**
**Adam P. Gulotta**
**Judice & Adley**
**P. O. Drawer 51769**
**Lafayette, LA 70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Dr. Syed Fazal-Ur-Rehman**

**KYZAR, Judge.**

The plaintiffs Chalyn Renaé Alfred and Kendrick Alfred appeal from a trial court judgment dismissing their suit with prejudice for failure to post a bond as security for costs pursuant to La.R.S. 13:4522. For the following reasons, we affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

The plaintiffs Chalyn Renaé Alfred and Kendrick Alfred are the surviving children of Jan Alfred Langston, the original plaintiff in this matter. On July 27, 2012, Mrs. Langston filed a medical malpractice suit against the defendant Dr. Syed Fazal-Ur-Rehman, claiming malpractice based on the improper placement of a pacemaker on November 23, 2009, which necessitated a surgical revision on December 3, 2009. She claimed that the pertinent dates of the medical malpractice included November 23, 2009, and "**every date thereafter**" when Dr. Fazal-Ur-Rehman "knew or should have known that the pacemaker he inserted on November 23, 2019 was not placed correctly." This matter was submitted to a medical review panel, which unanimously concluded that Dr. Fazal-Ur-Rehman did not breach the applicable standard of care in his treatment of Mrs. Langston.

On October 13, 2016, Mrs. Langston died of a condition unrelated to the issues raised in the malpractice action. On March 22, 2018, an amended petition was filed naming her children as plaintiffs.[1] Thereafter, Dr. Fazal-Ur-Rehman moved to have the plaintiffs post a bond as security for costs pursuant to La.R.S. 13:4522. At the conclusion of the August 13, 2018 hearing on the motion, the trial court ruled in favor of Dr. Fazal-Ur-Rehman and set the bond at $23,165.95, to be posted by the

---

[1] Initially, the succession representative of Mrs. Langston's succession was substituted as the proper party plaintiff in place of the decedent. However, following the trial court's denial of Dr. Fazal-Ur-Rehman's exception of no right of action, this court held that the plaintiffs were the proper parties to be substituted as party plaintiffs in place of the decedent. *Langston v. Dr. Fazal-Ur-Rehman*, 17-906 (La.App. 3 Cir. 10/5/17) (unpublished writ).

plaintiffs by October 1, 2018. A written judgment setting the cost bond was rendered on September 6, 2018.

On September 10, 2018, the plaintiffs notified the trial court of their intent to seek supervisory writs on the September 6, 2018 judgment, and on September 14, 2018, they filed a motion requesting that it set a date for the filing of their writ, which date was set as October 12, 2018. However, the plaintiffs neither sought writs from this court nor satisfied the bond requirement specified by the September 6, 2018 judgment.

On October 5, 2018, Dr. Fazal-Ur-Rehman moved to dismiss the plaintiffs' malpractice action based on their failure to post the bond. Following a November 26, 2018 hearing, the trial court granted Dr. Fazal-Ur-Rehman's motion. The written judgment granting the motion to dismiss, which was rendered that same date, decreed that the plaintiffs' claims against Dr. Fazal-Ur-Rehman were dismissed with prejudice. It is from this judgment that the plaintiffs appeal.

On appeal, the plaintiffs assign three allegations of error, as follows:

1.  The trial judge erred in dismissing the case with prejudice.

2.  The trial judge erred in applying LSA R.S. [13:4522] to a medical malpractice case after [2003] when a different type of bond was provided for in more specific legislation; to wit, LSA R.S. 40:1231.8(I)(2)(c) of the Louisiana Medical Malpractice Act (LMMA).

3.  Even if the trial judge correctly determined that LSA R.S. [13:4522] applied to medical malpractice actions, he abused his discretion on the amount of the bond. The bond should have been for $0.00; ergo, **NO** security was due and no penalty should have been imposed.

**OPINION**

We review the decision of the trial court in this case under an abuse of discretion standard as that court has the discretion to determine both the necessity for a bond to secure the cost of litigation and for fixing the amount of the bond provided

2

for by La.R.S. 13:4522. *Clarkston v. Funderburk*, 16-681 (La.App. 3 Cir. 2/1/17), 211 So.3d 509, 511, *writ denied*, 17-403 (La. 4/13/17), 218 So.3d 631.

On the other hand, questions of law, such as the proper interpretation of a statute, are reviewed by the appellate court under the *de novo* standard of review. *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So.3d 36. "On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record." *State, Through La. Riverboat Gaming Comm'n v. La. State Police Riverboat Gaming Enforcement Div.*, 95-2355, p. 5 (La.App. 1 Cir. 8/21/96), 694 So.2d 316, 319. "Appellate review of a question of law involves a determination of whether the lower court's interpretive decision is legally correct." *Johnson v. La. Tax Comm'n*, 01-964, p. 2 (La.App. 4 Cir. 1/16/02), 807 So.2d 329, 331, *writ denied*, 02-445 (La. 3/8/02), 811 So.2d 887.

At the outset, we note that the plaintiffs' appeal, in addition to appealing the dismissal of their claim against Dr. Fazal-Ur-Rehman, also appeals the September 6, 2018 judgment ordering them to post security for Dr. Fazal-Ur-Rehman's litigation costs. The September 6, 2016 judgment was an interlocutory judgment, which was not subject to an immediate appeal. La.Code Civ.P. art. 1841. "Although an interlocutory judgment may itself not be appealable, it is nevertheless subject to review by an appellate court when an appealable judgment is rendered in the case." *Territo v. Schwegmann Giant Supermarkets, Inc.*, 95-257, p. 4 (La.App. 5 Cir. 9/26/95), 662 So.2d 44, 46, *writ denied*, 95-2584 (La. 12/15/95), 664 So.2d 445. In *Babineaux v. University Medical Center*, 15-292, pp. 4 (La.App. 3 Cir. 11/4/15), 177 So.3d 1120, 1123 (alteration in original), this court, in discussing an appeal from an interlocutory judgment, stated:

3

Although the denial of a motion for new trial is generally a non-appealable interlocutory judgment, the court may consider interlocutory judgments as part of an unrestricted appeal from a final judgment. *Occidental Properties Ltd. v. Zufle*, 14-494 (La.App. 5 Cir. 11/25/14), 165 So.3d 124, *writ denied*, 14-2685 (La.4/10/15), 163 So.3d 809. Thus, "[w]hen an appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him in addition to the review of the final judgment." *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 14-141 (La.App. 1 Cir. 12/23/14), 168 So.3d 556, fn. 13 (unpublished opinion) (court considered the correctness of interlocutory judgments in conjunction with the appeal of the final and appealable judgment granting a motion for summary judgment).

Since the plaintiffs' appeal is taken from the judgment dismissing their claim against Dr. Fazal-Ur-Rehman, it is an unrestricted appeal from a final judgment. Thus, in addition to reviewing the judgment of dismissal, the plaintiffs are also entitled to a review of any prejudicial interlocutory judgments rendered against them, such as the judgment ordering them to post $23,165.19 as security for Dr. Fazal-Ur-Rehman's litigation costs. Accordingly, we find this issue is properly before us on appeal.

The plaintiffs assignments of error address the propriety of the trial court in the dismissal of their case with prejudice as a result of their failure to post the bond as ordered, in granting Dr. Fazal-Ur-Rehman's motion requiring them to post a bond for his court and litigation costs in a medical malpractice case, and finally the propriety of the amount of the bond set therefore. We address these assignments of error out of order.

*Assignment of Error Number Two*

In their second assignment of error, the plaintiffs argue that it was error for the trial court to apply La.R.S.13:4522 in this matter because subsequent to 2003, La.R.S. 40:1231.8(I)(2)(c)[2] was enacted, which provided for a different type of bond in medical malpractice actions. We address this issue first, as a resolution on this issue in the plaintiffs' favor would result in a reversal of the trial court judgment in full.

---

[2] Subsection (2)(c) of La.R.S. 40:1231.8(I) was added by 2003 La. Acts No. 1263, § 1.

4

Louisiana Revised Statutes 13:4522 provides for the cost bond at issue here and states as follows:

> The defendant before pleading in all cases may by motion demand and require the plaintiff or intervenor to give security for the cost in such case, and on failure to do so within the time fixed by the court such suit or intervention, as the case may be, shall be dismissed without prejudice. This section shall not apply to the Parish of Orleans and to cases brought in forma pauperis, nor to the state or any political subdivision thereof.

The Louisiana Medical Malpractice Act (LMMA) in La.R.S. 40:1231.8(I)(2)(a) and (b) provides that "[t]he costs of the medical review panel shall be paid by the health care provider if the opinion of the medical review panel is in favor of said defendant health care provider[,]" but that "[t]he claimant shall pay the costs of the medical review panel if the opinion of the medical review panel is in favor of the claimant." The costs of the medical review panel are set out in La.R.S. 40:1231.8 I(1)(a) and (b) as follows:

> (1)(a) Each physician member of the medical review panel shall be paid at the rate of twenty-five dollars per diem, not to exceed a total of three hundred dollars for all work performed as a member of the panel exclusive of time involved if called as a witness to testify in a court of law regarding the communications, findings, and conclusions made in the course and scope of duties as a member of the medical review panel, and in addition thereto, reasonable travel expenses.

> (b) The attorney chairman of the medical review panel shall be paid at the rate of one hundred dollars per diem, not to exceed a total of two thousand dollars for all work performed as a member of the panel exclusive of time involved if called as a witness to testify in a court of law regarding the communications, findings, and conclusions made in the course and scope of duties as a member of the medical review panel, and in addition thereto, reasonable travel expenses. Additionally, the attorney chairman shall be reimbursed for all reasonable out-of-pocket expenses incurred in performing his duties for each medical review panel. The attorney chairman shall submit the amount due him for all work performed as a member of the panel by affidavit, which shall attest that he has performed in the capacity of chairman of the medical review panel and that he was personally present at all the panel's meetings or deliberations.

In cases where "a medical malpractice suit filed by the claimant in which a unanimous opinion was rendered in favor of the defendant health care provider . . . the claimant who proceeds to file such a suit shall be required to post a cash or surety bond, approved by the court, in the amount of all costs of the medical review panel[]" and at the "conclusion of the medical malpractice suit, the court shall order that the cash or surety bond be forfeited to the defendant health care provider for reimbursement of the costs of the medical review panel, unless a final judgment is rendered finding the defendant liable to the claimant for any damages."  La.R.S. 40:1231.8(I)(2)(c).

In *Burge v. State*, 10-2229, p. 5 (La. 2/11/11), 54 So.3d 1110, 1113 (emphasis added), the supreme court laid out the rule of statutory construction applicable in instances where there are competing statutes:

> The general rule of statutory construction is that a specific statute controls over a broader, more general statute.  "It is a well-settled canon of statutory construction that the more specific statute controls over the general statute."  *State v. Sharp*, 05-1046, pp. 5-6 (La.App. 1st Cir.6/28/06), 939 So.2d 418, 421.  This Court has held that *"It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character."*  *State v. Campbell*, 03-3035, p. 8 (La.7/6/04), 877 So.2d 112, 118.

Clearly, the bond required to be posted by the plaintiff under La.R.S. 40:1231.8(I)(2)(c) only covers the pre-suit costs of the medical review panel proceedings and is designed to allow a winning health care provider to recover such costs at the conclusion of the lawsuit.  Accordingly, we find that La.R.S. 40:1231.8(I)(2)(c) in no way conflicts with, or preempts, La.R.S. 13:4522, which provides for a discretionary cost bond in favor of a defendant for litigation expenses pertaining to the actual lawsuit.  Thus, we find no merit in this assignment or error.

*Assignment of Error Number Three*

In their third assignment of error, the plaintiffs argue that the trial court erred in setting the bond in the case based on the showing made.  We agree in part.

In *Whitson v. American Ice Co.*, 164 La. 283, 287-88, 113 So. 849, 850-51 (1927), the supreme court interpreted the original version of La.R.S. 13:4522, as enacted by 1926 La. Acts No. 111, § 1:[3]

> [T]he defendant in a lawsuit is not concerned with securing the payment of any of the court costs except those which he may be responsible for without being condemned therefor by the judgment of the court.  A defendant may have to employ, and pay or be responsible for the fees of, expert witnesses, auditors, surveyors, or other scientists, whose services or opinions may be needed in defense of the suit; and their fees may be taxed as part of the costs of court, which the plaintiff may finally be condemned to pay. Code of Practice, art. 462; Act 19 of 1884, p. 25.  A defendant may also find it necessary to take the depositions of witnesses under commission, and may have to pay in advance or be responsible for the notary's fees or other expenses which may be taxed as costs of court and which the plaintiff may ultimately be condemned to pay.  As to such court costs alone—which the defendant may have to pay or be responsible for in advance of a judgment determining who shall pay the costs—the Act 111 of 1926 is applicable.  It is not applicable to the court costs generally, which the defendant in a case is not all responsible for unless and until he is finally condemned to pay them.  Security for the payment of such costs, in the parishes other than the parish of Orleans, is provided for in the fifth section of the Act 203 of 1898, p. 490, which allows the clerk of court or the sheriff to demand of the plaintiff security for costs at the time of filing the suit, and to demand additional security at any time thereafter, and allows those officers to collect all court costs semiannually, on the 1st day of January and 1st of July, during the pendency of the suit.  That statute is not in conflict with the Act 111 of 1926 and is not thereby repealed.

> We maintain therefore that the Act 111 of 1926 does not permit the defendant in a lawsuit to harass the plaintiff by meddling in a matter that does not particularly concern the defendant.  The clerk of court and the sheriff may be depended upon to perform their duty under section 5 of the Act 203 of 1898—to look after securing the payment of the costs of

---

[3] La.R.S. 13:4522 as it currently exists contains no substantive change from the original version enacted by 1926 La. Acts No. 111, § 1, which act, in pertinent part, provided as follows:

> Be it enacted by the Legislature of Louisiana, That the defendant before pleading in all cases . . . may by motion demand and require the plaintiff, third opponent or intervenor to give security for the cost in such case, and on failure to do so within the time fixed by the Court such suit, third opposition or intervention, as the case may be, shall be dismissed as in case of non-suit; provided this shall not apply to cases brought in forma pauperis, nor to the state or any political subdivision thereof.

court—and particularly those which the defendant is not responsible for until and unless he is condemned to pay the costs by the final judgment.

Further, the trial court has discretion in setting the amount of the bond, but this discretion must be exercised "with due regard for the actual necessity for a bond and for the interest or motive of the party demanding it." *Id.* at 851. With regard to Dr. Fazal-Ur-Rehman's burden of proof for establishing the necessity for the bond, "it is within the discretion of the trial judge to determine whether the showing required may be made by the allegations in the motion, supporting affidavits, the arguments of counsel at the hearing, introduction of evidence, or in any other manner which the trial judge deems appropriate." *Carter v. Phillips*, 337 So.2d 187, 189 (La.1976)

Dr. Fazal-Ur-Rehman introduced the following exhibits in support of his motion: the signed oaths of the four members of the medical review panel; the signed findings of the three medical review panel physicians; the affidavit of J. Ryan Pierret, a member of Dr. Fazal-Ur-Rehman's counsel's law firm, setting $2,500.00 as a reasonable estimate for a physician expert witness fee; the affidavit of Dr. Fazal-Ur-Rehman's counsel, regarding the correctness of attached invoices from depositions taken of Dr. Fazal-Ur-Rehman, Mrs. Langston, Dr. William Walker, and Dr. John P. Schutte; and an order and a judgment setting bonds as security for costs in two unrelated matters.

Within the overall bond of $23,165.95 ultimately set by the trial court, $5,000.00 of this total included the jury bond required to be posted by Dr. Fazal-Ur-Rehman by virtue of La.Code Civ.P. arts. 1733 and 1734, as he was the party that requested a jury trial in this matter. Also included in the bond amount was $1,500.00, which was described by Dr. Fazal-Ur-Rehman as court costs related to an anticipated five-day trial, including the costs of issuing witness subpoenas. However, we find that these costs are not those that may be included in the cost bond provided by

8

La.R.S. 13:4522. The statutorily required jury bond is specifically required to be posted by the party requesting the jury trial. To conclude that a defendant can then immediately shift these costs to the plaintiff who did not request the jury trial is to negate the legislative will in requiring that the party moving for a jury trial be the party to post the bond for that cost. We further find that the trial and subpoena costs were specifically excluded from the litigation costs covered by La.R.S. 13:4522 per the supreme court's holding in *Whitson*, because Dr. Fazal-Ur-Rehman would not be responsible for those costs in advance of a judgment rendered in this matter. As stated in *Romero v. Romero*, 232 So.2d 572, 574 (La.App. 3 Cir. 1970):[4]

> What costs are included in R.S. 13:4522? Only those necessary expenses which defendant may have to pay or be responsible for in advance of a judgment determining who shall pay the costs, and which plaintiff may ultimately be condemned to pay. Examples cited in Whitson were "fees of expert witnesses, auditors, surveyors or other scientists, whose services or opinions may be *needed* in defense of the suit * * * which the plaintiff may finally be condemned to pay. * * * A defendant may also find it *necessary* to take the depositions of witnesses under commission, and may have to pay in advance or be responsible for the notary's fees or other expenses which may be taxed as costs of court and which the plaintiff may ultimately be condemned to pay." 164 La. 283, 288, 113 So. 849, 850. (Emphasis added.)

In addition to the above-stated expenses, the bond granted by the trial court included the estimated expert witness fee costs for five medical experts to testify at the trial. Three of these medical experts were on the medical review panel that reached a unanimous decision in favor of Dr. Fazal-Ur-Rehman, finding that he did not breach the required standard of care in his treatment of the plaintiffs' mother. Counsel for Dr. Fazal-Ur-Rehman indicated at the hearing that the remaining two medical experts were being called on the issue of causation.

---

[4] Overruled on other grounds by *Carter v. Phillips*, 337 So.2d 187 (La.1976).

In *Carter*, the supreme court held in a medical malpractice case under similar facts that the record did not support the necessity for the bond as set or the interest or motive of the defendant in seeking the bond:

> However, we feel that the trial judge abused his discretion here in accepting as a showing the allegations in the motion and perhaps argument of counsel. There is no indication in the record that the trial judge exercised his discretion "with due regard for the *actual necessity* for a bond and for the interest or motive of the party demanding it." (Emphasis added). *Whitson v. American Ice Co.*, 113 So. 849, 851. We are not convinced by the bare pleadings that the defendant needed the testimony of five expert witnesses in order to properly defend his suit. Nor is it clear why the defendant must take the depositions of the three doctors from Alexandria rather than subpoenaing them as witnesses at the trial.

*Id.* at 189.

The bond set by the trial court in *Carter* included the costs for five medical experts and there was no evidence of the nature of the testimony sought from the experts, whether the testimony would be cumulative or overlapping, or any other evidence that may have aided the trial court in determining the necessity for inclusion of the entirety of such costs in the bond.[5] As to the medical review panel members in the instant case, there is no indication of any consideration in the record of the necessity of calling all three members of the panel to testify live at the trial when the written decision of the panel is admissible as evidence and one of the members can express the opinion of the entire panel given the unanimity of the opinion.

Moreover, La.R.S. 40:1231.8(H) (emphasis added) provides:

> Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, *at his cost*, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify. A panelist shall have absolute immunity from civil liability for all communications, findings, opinions

---

[5] In *Carter*, a hearing was held on the defendant's motion for a cost bond, but no testimony or evidence was introduced into the record. Additionally, a transcript of the hearing on the motion was not made part of the appellate record.

and conclusions made in the course and scope of duties prescribed by this Part.

Because La.R.S. 40:1231.8(H), which is specifically directed to medical malpractice actions, directs that the party calling a member of the medical review panel as a witness at trial bears the costs of doing so, we find that Dr. Fazal-Ur-Rehman may not request a bond under the general provisions of La.R.S. 13:4522 to cover these costs.

Thus, we find error in the inclusion of $7,500.00 for all three medical review panel witnesses in the cost bond.

Regarding the remaining $9,165.95 covered by the bond, $5,000.00 was from the expert witness fees for the two physicians that Dr. Fazal-Ur-Rehman intended to call on the issue of causation and $4,165.95 represented deposition costs from four depositions already taken by him. The $5,000.00 for the expert witness fees was based on the affidavit of a member of Dr. Fazal-Ur-Rehman's counsel's law firm, which stated that a minimum reasonable anticipated cost for a physician expert witness was $2,500.00. Also introduced into the evidence were invoices associated with the depositions of Mrs. Langston, Dr. Fazal-Ur-Rehman, Dr. John Schutte, and Dr. William Walker, which totaled $4,165.95.

In setting the overall bond amount, the trial court stated that its determination was based "on these estimates and the court's knowledge and experience with these cases and these types of fees and the court's feeling that these estimates are ball park [sic]." As the $5,000 expert witness fees and the $4,165.95 deposition costs are properly included in the La.R.S. 13:4522 cost bond, as set out in *Romero*, 232 So.2d 572, we find that the trial court did not abuse its discretion in including the $9,165.95 related to these costs in the cost bond amount.

Thus, we affirm the judgment insofar as the bond includes $9,165.95 for the estimated expert witness fees and deposition costs, which were supported by the record, but we reverse the judgment with regard to the remaining $14,000.00, which is not supported by the record or the law related thereto. On remand, Dr. Fazal-Ur-Rehman is reserved the right to demand, whenever the necessity may arise, security for any court costs which the defendant may actually have to incur or be responsible for in advance of a final judgment condemning either party to pay such costs. *Whitson*, 113 So. 849, and *Jones v. Williams*, 191 La. 129, 184 So. 565 (1938).

### *Assignment of Error Number One*

We further find that the trial court erred in granting Dr. Fazal-Ur-Rehman's motion to dismiss the case with prejudice, which was based on the plaintiffs' failure to post the bond pursuant to La.R.S. 13:4522. Having reversed in part the trial court's judgment setting the bond at $23,165.95, we find that the dismissal of the plaintiffs' action was also in error. Consequently, the trial court's November 26, 2018 judgment, dismissing the plaintiffs' claims against Dr. Fazal-Ur-Rehman, with prejudice, is reversed.

### DISPOSITION

For the reasons set forth herein, the judgment of the trial court requiring Chalyn Renaé Alfred and Kendrick Alfred to furnish a bond as security for Dr. Syed Fazal-Ur-Rehman's litigation costs is affirmed insofar as it includes $9,165.95 in the amount of the bond, but is reversed with regard to the remaining $14,000.00. The judgment of the trial court dismissing with prejudice the claims of Chalyn Renaé Alfred and Kendrick Alfred against Dr. Syed Fazal-Ur-Rehman is also reversed, and this matter is remanded to the trial court for further proceedings. The costs of this appeal are assessed equally between the parties.

### AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.